EDWARD BARNETT AND ANOTHER v. J. L. POOL AND OTHERS.

Real estate can only be conveyed in conformity to the law of the country where it is situated.

Although there is a diversity of opinion, as to personal property, it is universally admitted, that the real estate of a bankrupt, situate in a foreign country, does not pass under the assignment.

The facts, that the bankruptcy was a voluntary one, under the bankruptcy law of the United States of 1840; that the property was voluntarily placed in his schedule by the bankrupt; that he delivered the title-papers to the assignee, by whom a sale was made, and a conveyance executed, with his approbation; that the purchase-money was received, and appropriated by the assignee, with his knowledge and consent; that he acquiesced in all the proceedings, and continued, subsequently, to recognise the sale as valid and binding; will not, if the land be situate in a foreign country, create an equitable title by estoppel, in the purchaser, that can be enforced, either against the bankrupt, or a naked trespasser.

ERROR from Anderson. Tried below before the Hon. Charles A. Frazer.

This was a suit by the plaintiffs in error, Edward Barnett and Lafayette N. Lane, against the unknown heirs of Spencer Gloyd, to establish their title, and have decreed to them the legal title for a league of land situate in the said county; and also to recover the possession of the same from the defendant, J. L. Pool.

The plaintiffs averred, in their petition, that the land in controversy had been granted in 1835, by the government, by valid title, to William R. Wilson, and by him conveyed to Adolphus Sterne, and by Sterne to Spencer Gloyd, to whom the *testimonio* of the grant, and chain of conveyance, had been delivered. That in the year 1841, Gloyd made a voluntary application to the United States District Court for the Eastern District of Louisiana, for a discharge in bankruptcy, and voluntarily embraced the said league of land in the schedule of property surrendered by him, for the benefit of his creditors; and the better to enable the assignee, appointed by the said court, to sell the said land, and as evidence of a title to the same, to be delivered to the purchaser, he delivered to the said assignee all his muniments of title to the said land. That the said land was sold by the assignee, by and with the consent and approbation of Gloyd, to the plaintiff, Lane, and one Adrian Blanchard, whose interest had been subsequently conveyed to the plaintiff, Barnett; and that the assignee, in conformity with the terms and provisions of the sale, and in accordance with the law under which the proceeding was had, and with the consent of Gloyd, executed to the purchasers a title for the said land, by an act of sale, passed in accordance with the law and usage of the State of Louisiana, where the transactions occurred, before a notary public; and at the same time, with the like consent of Gloyd, delivered to them the muniments of title, which the plaintiffs attached to and made a part of their petition. That the said sale was, in all things, fairly and properly made, and that the purchase-money for the land was paid by the purchasers, and distributed among the creditors of the bankrupt. A copy of all the proceedings in bankruptcy, had on the application of Gloyd, were attached to and made a part of the petition. It was further averred, that from

the time of the said sale, the taxes upon the land had been paid by the purchasers and those claiming under them; that neither Gloyd nor his heirs, nor any other person under him, had, in any manner, claimed the said land, or objected to the said proceedings in bankruptcy, or the sale of the said land; that at the time of the said application in bankruptcy, none of the creditors of Gloyd were citizens of Texas, nor had any of his creditors, since that time, been a citizen of Texas, nor had any proceeding ever been instituted within the jurisdiction of the Republic or State of Texas, to subject the said land to the payment of any debts or liabilities of Gloyd, or for the purpose of administration upon the same, as his property. That Gloyd was dead, and his heirs unknown, and that the defendant Pool, was in possession of the land, without title, and did not pretend to claim or hold under Gloyd, in any manner whatever.

The defendant, Pool, excepted to the petition, because it was thereby shown, that the plaintiff derived his title through a sale under the bankrupt law of the United States; and that the proceedings had, under that law, in the District Court of the Eastern District of Louisiana, were void for want of jurisdiction, and could not, in any manner, affect the title of the land sued for.

The heirs of Gloyd were cited by publication, but did not appear; whereupon, the court appointed the attorneys of the defendant, Pool, to represent them, who, for an answer in their behalf, adopted the exceptions previously filed for him.

The defendants' exceptions were sustained, and judgment was given in their favor; from which the plaintiffs prosecuted their writ of error.

*T. J. Word* and *George F. Moore,* for the plaintiffs in error.

*John E. Cravens* and *Donley & Anderson,* for the defendants in error.

WHEELER, C. J.—It is the well settled doctrine of the common law, that real property is exclusively subject to the laws of

the government, within whose territory it is situate. Every disposition of real estate must depend, for its validity, upon its conformity to the law of the country in which that estate is situated. This principle is applied to the case of foreign bankrupt laws; although, as to personal property in a foreign country, there is a diversity of opinion as to the effect of the assignment in bankruptcy, it is universally admitted, that the real estate of the bankrupt so situate, does not pass under the assignment. Accordingly, in Oakey v. Bennett, 11 How. Rep. 33, the Supreme Court decided, that a decree in bankruptcy, passed in 1843, by the District Court of the United States for the Eastern District of Louisiana, did not pass to the assignee, the title to a house and lot, the property of the bankrupt, situated in Galveston, in this state, (then republic,) upon the principle that the bankrupt law of the United States could have no extra-territorial operation upon real property. It was further held, that the act of sale, or conveyance, by the assignee of the bankrupt, similar to that in the present case, did not pass the fee, because not made according to the form required by the laws of Texas for the conveyance of real estate. That case, it would seem, must be decisive of the present.

The general principle is admitted; but it is insisted that, although the proceedings in bankruptcy did not pass the legal title, yet the acts of the bankrupt operated an estoppel upon him and his heirs, and transferred the equitable title to the purchaser. This position cannot be maintained. It is an admitted doctrine, that if a person having the legal title to property stands by and acquiesces in the sale of it by another person, having color of title, he will be estopped afterwards, from asserting his title against the purchaser. This principle applies to personal property, in the transfer of which no technical formalities usually intervene to prevent its application; and to real property, where the vendor has color of title. But if that were not wanting in the assignee of the bankrupt, in this case, or be not material, there was wanting the deception, which is the ground of the estoppel. (1 Story, Eq. § 385, note; 2 Hilliard

on Real Property, 428, note.) The purchaser was not deceived or misled, as to the true state of the title, by the conduct of the bankrupt. He reposed no confidence, acted upon no representation of the bankrupt, respecting the goodness of the title, or the situation of the land. He was apprised that the land was in a foreign government, and his loss resulted solely from his ignorance of the law, and the formalities necessary to transfer the title.

The circumstances relied on, as creating an equitable title, in directing the purchase, (by having made the assignment,) and receiving the benefit of it, cannot amount to more than the receipt of the consideration, and an implied promise to convey; and it will not be contended that, upon these, an action for specific performance could be maintained. The proceedings in bankruptcy did not vest in the purchaser a title, legal or equitable, to the land in question. They did not pass the title to land situated in a foreign country. But this could not be true, if they vested in the purchaser the equitable title, as supposed; for then he would be the owner of the land, as absolutely as if invested with the legal title; and he would have his remedy by an action for specific performance. On the contrary, it was said, by Lord ELDON, that there exists no legal or equitable obligation on the bankrupt to make a conveyance to his assignees. (Cited in Story, Confl. Laws, § 428.)

In fine, it is an universally admitted principle, that the title to land can be acquired and lost only in the manner prescribed by the law of the place, where the property is situated. The plaintiffs have not acquired, nor has the bankrupt parted with his title, in any manner known to the laws of this country. The plaintiffs, therefore, were not entitled to maintain their action, and there is no error in the judgment.

Judgment affirmed.