### J. H. SIMPSON & CO. V. GRINNAN & DUVAL.

(March 16, 1880.)

DRAFT.— Maker of may be charged as garnishee of payee, when; bill of interpleader; pendency of another suit for same cause of action.

ERROR from Colorado county. Opinion by WALKER, J.

STATEMENT.— March 10, 1876, J. L. Harris & Co. brought suit in the district court of Colorado county against S. W. Patchen, a resident of New York, and J. H. Simpson & Co., bankers, and residing in Colorado county, claiming that defendants owed one Moses Winter eight hundred dollars; that the debt had been assigned by Winter to one D. D. Chandler, and by Chandler to plaintiffs; that the said Patchen and one W. B. Coit were in collusion to defraud Harris & Co. and Winter, and prevent their getting

the money sued for; specifically charging that the draft was obtained by using money belonging to Winter and taken from his safe by Coit, and that the draft had been drawn in Patchen's name and sent to him for collection in fraud of Winter, etc.

Simpson & Co. accepted service, and answered on September 14, 1876, admitting that W. B. Coit, on December 2, 1875, purchased of defendants, then doing an exchange business, a check or draft on the city of New York for $800, payable to the order of S. W. Patchen, and drawn on S. M. Swenson, for which he, Coit, paid defendants $800 in cash; that within a few days thereafter Winter came to their office, in Columbus, and told them that the money which Coit had used in the purchase of the draft was not his, Coit's, money, but belonged to and was the private property of him, the said Winter, and had been illegally and fraudulently appropriated by him, Coit, without the knowledge or consent of Winter, and that Winter then and there insisted and earnestly requested defendants to stop the payment of said check until the matter could be inquired into.

Defendants being willing to prevent any wrong "and to protect Winter, did at once telegraph to Swenson to refuse payment when the draft should be presented. This was done and Patchen immediately brought suit upon the draft in the supreme court of the county and city of New York against the defendants, which suit is now pending there; and they have been cited to appear and answer in due form of law; and Swenson, who had funds of defendants in his hands, has been served with a writ of garnishment in said cause at the instance and request of said Patchen, the plaintiff."

"Furthermore, it is shown to the court that in suit No. 3,369, styled Grinnan & Duval v. Moses Winter et al., now pending in this court, these defendants have been summoned to answer as garnishees what they owe defendants,

or what moneys or effects they have in their hands belonging to said defendants. And these defendants have already filed their answer in said cause, setting up, in substance, the matters and things herein alleged, and praying the court, for their own protection, that all parties concerned be compelled to come into court and interplead, and that it be determined by the court to whom the said $800 rightfully belongs."

" Now, it is affirmed by these defendants, that said transaction had with the aforesaid W. B. Coit, at the day and date alleged, was in the usual course of their exchange business, and was *bona fide* on their part; that they had no reason to doubt but that the funds used by Coit properly belonged to him; that there was nothing in the transaction calculated to excite suspicion that the funds used was the money of Winter; that they acted immediately for the protection of Winter on being informed by him that the money was his and had been fraudulently used by Coit; that they set up no adverse claim to the money, but hold it in trust for its rightful owner."

Defendants "ask for the protection of the court so that no second recovery can be had against them."

" That the parties who are claiming the money, to wit, the said S. W. Patchen and the said J. L. Harris & Co., plaintiffs in this suit, and the aforesaid Grinnan & Duval, plaintiffs in No. 3,369, now pending in this court, be compelled to interplead, and that it be determined, by judicial investigation, to whom said funds properly belong, for the protection of these defendants who have acted in good faith and without taint of fraud or wrong;" also asking costs and attorney's fees out of the fund.

The defendant, Patchen, was personally served with citation and copy of petition in New York, July 6, 1876, shown by affidavit of the party making the service.

March 5, 1877, Grinnan & Duval intervened in this suit, No. 3,364, and set up in detail their claim in alleging the

debt of Winter & Coit, suit against them, garnishment against J. H. Simpson & Co. in the suit No. 3,369; the answer of the garnishees.

March 9, 1877, by amended petition in intervention, Grinnan & Duval alleged that they had, on the same day, obtained judgment against Winter & Coit for $1,603, and setting up facts showing their right to the $800, and asking judgment for it.

March 9, 1877, judgment by defendants was taken against Patchen and trial had before the judge, when the following judgment was rendered:

"J. L. Harris & Co. \
No. 3,364.　　　vs. \
S. W. Patchen and J. H. Simpson & Co. }

"Grinnan & Duval \
No. 3,369.　　　vs. \
Moses Winter and W. B. Coit. }

"This day this cause coming on to be heard, the plaintiffs, J. L. Harris & Co., appeared by their attorneys and announced themselves ready for trial. Came, also, the defendants, J. H. Simpson & Co., and announced themselves ready for trial, but the defendant, S. W. Patchen, though duly cited in terms of the law, came not, but wholly made default; came also, by attorney, J. S. Grinnan and B. G. Duval, . . . and the parties having waived a jury and submitted the matters in controversy, as well of fact as of law, to the court," etc. . . . It appearing to the court that the fund of $800, now in the hands of defendants, J. H. Simpson & Co., is the property of Moses Winter, and that the defendant, S. W. Patchen, has no interest therein or claim thereto; . . . that Harris & Co. have no claim to it. . . . The recitals showed the proceedings in No. 3,369 in detail, and proceeded:

"It is ordered, adjudged and decreed by the court, that the plaintiffs, J. L. Harris & Co., take nothing by their suit, and that defendants, Patchen and J. H. Simpson &

Co., go hence and recover of plaintiffs their costs; further adjudged that J. H. Simpson & Co. pay over to the intervenors, Grinnan & Duval, the sum of $800, in their hands, and that intervenors recover costs of plaintiffs; that Simpson & Co. retain $25 for their compensation for answering as garnishees in No. 3,369; costs for benefit of officers of court."

The defendants, Simpson & Co., took no exceptions; made no motion for new trial.

OPINION.— The testimony was sufficient to support the judgment as to the ownership of the funds, and the garnishee proceedings. The allegations in the answer of J. H. Simpson & Co. were also sustained by testimony, except that the proceedings in the New York suit were only proved by parol, over objections of plaintiffs, and no details of its proceedings given. Simpson & Co. bring the case by writ of error to the supreme court, assigning many errors, but substantially that the judgment does not protect the defendants against a second judgment for the same money; and that the facts did not show funds in their hands subject to the judgment, and that proper proceedings were not taken to reach the fund.

The second and fifth assignments resist the right of Grinnan & Duval to recover, because the funds were not reached by the writ of garnishment. The facts seem to have been fully stated in the pleadings. It was shown that Simpson & Co. had been garnished in suit No. 3,369, of Grinnan & Duval v. Winter & Coit; that in the answer to the garnishment, and in their answer in this suit, No. 3,364, of Harris & Co. v. Patchen and Simpson & Co., they, Simpson & Co., had set up the facts and had asked that the several parties, naming them, should be required to interplead and settle the question of ownership. This request was substantially met by Grinnan & Duval intervening; and it was adjudicated that (1) Simpson & Co. had

the fund; (2) that Patchen and Harris & Co. and Grinnan & Duval were each claiming it; (3) that Grinnan & Duval were entitled to the fund.

This settled all disputes and afforded Simpson & Co. the protection they asked. Iglehart *v.* Moore, 21 Tex., 504, and cases cited.

The third assignment insists that the draft in Patchen's hands could not be reached by garnishment of Simpson & Co. The rule as to garnishment of the maker of a promissory note is given by Mr. Sayles: "The maker of a negotiable note cannot be charged as garnishee of the payee of a note before its maturity; and he cannot be charged as such after its maturity unless it be affirmatively shown that at the time of serving the writ the note was the property of the payee." Sayles' Prac. (2d ed.), sec. 396; Barrett *v.* Goldthwaite, 22 Tex., 234.

Here it was affirmatively shown that Patchen, the payee, was still the holder of the draft; also that Winter's money was taken without his consent from his safe and used in the purchase of the draft; Coit, who obtained it and sent it to Patchen, was also party and concluded in the suit. The draft had been dishonored and the funds retained for investigation. Under the most stringent rule the pleadings set up facts authorizing the condemnation of the funds to the judgment of Grinnan & Duval.

3. The sixth assignment is: That "the pleadings and evidence show that previous to the institution of this suit Patchen had sued Simpson & Co. in New York and had stopped funds in Swenson's hands; that they were parties to the suit, duly served with citation; that it was a proceeding *in rem*, and that the courts of Texas could take no jurisdiction over the funds sued for in New York. They contend that either this suit should be delayed until the result of the New York suit was known, or a conditional judgment rendered depending upon the result of that suit." The answer to this is, that no such relief was asked in the court below.

The full prayer of Simpson & Co. is: "And these defend-ants ask for the protection of the court so that no second recovery can be had against them; that the parties who are claiming the money, to wit, the said S. W. Patchen, and the said J. L. Harris & Co., plaintiffs in this suit, and the aforesaid Grinnan & Duval, plaintiffs in No. 3,369, now pending in this court, be compelled to interplead, and that it be determined, by judicial investigations, to whom said funds properly belong, for the protection of these defend-ants, who have acted in good faith and without taint of fraud or wrong. And these defendants ask that they also recover all costs; and as they are in no wise to blame, and are in court without just cause, that they be allowed to re-cover against the fund in their hands suitable attorney's fees for payment of counsel, whom they have been com-pelled to employ in this cause and in the Grinnan & Duval Case above named."

While there was no formal interpleading, yet Grinnan & Duval, by leave of the court, intervened, setting out the facts relied on by them. This has been held equivalent to interpleading where law and equity are administered in sep-arate courts. Iglehart v. Moore, 21 Tex., 504, and cases cited; Taylor v. Gillean, 23 Tex., 517.

Appropriate pleadings were on file. It was "determined, by judicial investigation, to whom the funds belonged." As requested, out of the funds said by them to be "in their hands," they were allowed to retain their expenses and attorney fee. They contemplated on such adjudication that the fund would be taken from their hands. They asked no postponement or action protecting against the suit in New York.

Had there been appropriate averments, sustained by tes-timony, showing a necessity of protection against the pro-ceedings in New York, and it had been refused, there might be grounds of complaint if exceptions had been taken be-low. The case below seems to have been disposed of to the satisfaction of Simpson & Co. at the time.

4. The seventh assignment urges that the court did not extend proper protection to Simpson & Co., who were innocent stockholders. They had all they asked.

5. The fourth and eighth assignments question the sufficiency of the pleadings and evidence to show that any funds were in the hands of Simpson & Co. In this their prayer is a sufficient answer. It requested that they be allowed to retain expenses out of the fund in their hands.

6. The first and ninth assignments are general, pointing out no error, and will not be noticed. The parties may be in danger from the proceedings in the New York courts, but the pleadings do not present this question for revision.

Finding no error in the record, the judgment should be affirmed.