W. D. LACEY ET AL. v. PEARL FLOYD ET AL.

No. 1439.    Decided June 5. 1905.

**1.—Will—Devise—Minority—Construction.**

Under a devise of certain real property to the son of testator, "to hold during his natural life and at his death to his lawful heirs," with provision in a subsequent clause that such property "shall be his own to have and to hold as his own when he becomes of age, but not before" the devisee took under the will a right of present possession and enjoyment, though a minor, the latter clause having no effect to change the character of the estate previously created, but only to deny to the minor as the law would do without it, the control of his property until he should come of age. (P. 116.)

**2.—Will—Rule in Shelley's case.**

A devise of real property to the son of testator "to hold during his natural life and at his death to his lawful heirs," was governed by the rule in Shelley's case, the devisee taking title in fee simple and not a life estate with remainder to his heirs, and the vendee to whom he conveyed held title as against the heirs, after his death. Hancock v. Butler, 21 Texas, 804, distinguished. (P. 117.)

Error to the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

Floyd and others sued Lacey and others for the recovery of land and had judgment therefor. Defendants appealed, and on affirmance obtained writ of error.

*Jno. G. Winter,* for plaintiff in error, Lacey. *Boynton & Boynton,* for plaintiffs in error, Richardson and McAlester.—When a person takes a legal estate of freehold under a will and in the will there is a limitation by way of remainder, of an interest of the same legal quality to his heirs, as a class of persons, to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate.

The will of Thomas Steele, Sr., in devising certain lands, including those in controversy, to Amos B. Steele, "to have and to hold during his natural life, and at his death to his lawful heirs," conferred upon said Amos B. Steele a fee simple title and his conveyance of said lands to W. A. Poindexter by fee simple warranty deed conveyed the entire title. Hancock v. Butler, 21 Texas, 804; Brown v. Bryant, 17 Texas Civ. App., 455; Johnson v. Morton, 67 S. W. Rep., 790; Hardage v. Stroope (Ark.), 24 S. W. Rep., 490; Nichols v. Gladden, 23 S. E. Rep., 459; Chamblee v. Broughton, 27 S. E. Rep., 111; Curry v. Patterson, 38 Atl. Rep., 594; Simms v. Buist, 30 S. E. Rep., 400; Edgerton v. Aycock, 31 S. E. Rep., 382; Brockschmidt v. Archer, 60 N. E. Rep., 623; Waters v. Lyon, 40 N. E. Rep. 662.

It appears by the statement of facts that Mrs. Steele died before her husband, the testator, and we submit that the clear interpretation of the terms of the will is that the fee vested in Amos eo instante upon the death of his father, and that the control only of the property was postponed to his majority "to have and to hold as his own when he becomes of age;" that is to say, that prior to majority he was not to have it and hold it as his own, to do as he pleased with it; that privilege of the ownership was postponed. It seems, too, that the expression "the property known as Amos B. Steele's," etc., really refers to property other than the land here in controversy—to property "known" as Amos' before and at the time the will was made. This expression occurs in a clause of the will subsequent to that bequeathing the land, and in an entirely different connection—to refer probably to live stock known as Amos', as a bunch of horses—for in one of the last clauses it is provided that any "horse stock belonging to Amos that may run at a distance from home, might be sold if thought proper," etc.

*H. C. Lindsey,* for defendant in error.—In order that any instrument may fall within the rule in Shelley's case, it is necessary that the estate of the ancestor, or first taker, should be a freehold. If such prior estate is not a freehold, the rule does not apply, for the reason that there would be no seizin, and the fee would be in abeyance. Hancock v. Butler, 21 Texas, 807; 4 Kent, 243, stating the rule.

Whenever there are qualifying or explanatory words superadded to the words "heirs," "heirs of the body," or "bodily heirs," showing that the maker had in his mind a certain class of individuals who should take the remainder after the termination of the prior life estate, and by such words had designated them, then such words are words of purchase, and not words of limitation. To such instruments the rule in Shelley's case does not apply. And the American courts more readily seize hold of any qualifying or superadded words, varying the sense of the technical terms, in order to make them words of designation, than is done in England.

If from the qualifying or explanatory words superadded to the word "heirs," as gathered from the whole of the will, it can be ascertained that the testator used the word "heirs" with its import of designation, and not its import of limitation, then the rule in Shelley's case does not apply, and the heirs take as purchasers. Hancock v. Butler, 21 Texas, 804; Simonton v. White, 93 Texas, 56; Johnson v. Morton, 4 Texas Court Reporter, 749; 2 Redfield on Wills, 338, and notes; 3 Greenleaf's Cruise, 364.

In order that the rule in Shelley's case may apply there must be a freehold in the first taker, or ancestor, limited expressly or by implication. An estate less than a freehold would not be sufficient, because a seizin in the first taker is necessary to draw the remainder to the particular estate. Tiedeman on Real Property, sec. 434.

The will of Thomas Steele gave a life estate in all his land to his wife, the mother of Amos. At her death he gave a life estate to Amos; but the will provided that this property should "be his (Amos'), to have and to hold as his own when he becomes of age, but not before." Trans. page. The will further provides: "I furthermore will that enough of my income be set aside to pay the tax on the aforesaid land until Amos B. Steele becomes of age." Amos was a minor. 4 Kent's Commentaries, p. 242; Tiedeman on Real Property, sec. 434; Starnes v. Hill (N. C.), 28 L. R. A. 598.

No seizin or ownership of a freehold estate in land of freehold tenure can begin in futuro. This is owing to the fundamental doctrine of the feudal law, that such seizin can be given only by a present livery, actual or constructive. Gray's Rule against Perpetuities, sec. 6.

Under this will Amos was not to have a present estate. He was not even to have it at the death of his mother. He was only to have it after her death, "when he becomes of age and not before." Gray's Rule against Perpetuities, sec. 6; 4 Kent, 61; I Greenleaf's Cruise, 54.

The interest given to Amos by the will of his father was a contingent executory devise. It was not of the dignity of a freehold, and was not of such importance and strength as to be able, under the common law,

to draw to it the estate in fee limited to his heirs.  Gray's Rule against Perpetuities, sec. 9; Tiedeman on Real Property, sec. 531.

The mother of Amos took a life estate; and Amos only took after her death.  Therefore the interest of Amos was only a remainder.  And this remainder must, of necessity, have been either a vested remainder or a contingent remainder.  And as Amos was a minor, and was to take the property only "when he becomes of age and not before," and as it was doubtful whether he ever would be of age, it was a contingent remainder.  "A remainder is contingent when, in order for it to come into possession, the fulfillment of some condition precedent, other than the determination of the preceding estate, is necessary."  Gray on Perpetuities, sec. 9.  "If it be uncertain whether a use or estate, limited in futuro, will ever vest, such use or estate is a contingent remainder."  Buford v. Holliman, 10 Texas, 572; 4 Kent, 203-204.

Here Amos could not take until he became of age, no matter how early his mother's preceding estate might determine.  Such an estate, by the early rules of the common law, was forbidden.  And it was only by a course of judicial legislation based upon the statute of wills enacted in the reign of Henry VIII, that the law of executory devises was involved, the cardinal rule for the construction of wills being that the intention of the testator must be carried out, if at all possible.  In conformity with this liberal rule of construction, the common law rule for the limitation of future interests in real property was discarded, estates or interest were created and recognized under the name of executory devises, which could not have been created at common law by deed.  Mr. Fearne defines an executory devise to be "such a limitation of a future estate or interests in lands as the law admits in the case of a will, though contrary to the rules of limitation in conveyances at common law."  Tiedeman on Real Property, sec. 530.

Executory devises are vested or contingent.  The devise is vested where the person who is to take is in esse and is ascertained, and where the event upon which he is to take is also certain.  Such a devise takes a vested future estate.  Where the estate is to vest upon an uncertain event, or in a person not definitely ascertained, the executory devise is contingent, and partakes of the nature of a contingent remainder.  Therefore, whatever interest Amos ever had under the will was a contingent executory devise.  Therefore, as Amos was a minor when the will was made; and as he was a minor when the testator died; and as he was to take when he became of age, it is clear his intent was not a freehold; that it could not draw to it the remainder limited to his heirs, and is not covered by the rule in Shelley's case.  There is not the slightest doubt in this case that the intention of the testator was to give Amos an interest for his life, only; and there is not the slightest doubt that he intended also that the children of Amos should have the remainder in fee.  And we contend that both the law and the intent of the testator were enforced by the judgment of the district court, and by that of the Court of Civil Appeals.  We therefore respectfully ask that this case be affirmed.

BROWN, ASSOCIATE JUSTICE.—Thomas Steele, who is the common source of title, made a will on the 4th day of December, 1867; his wife being then alive, but she died before he did. Thomas Steele died in 1868, and the will was duly probated in McLennan county during that year. Amos B. Steele was a son of Thomas Steele and survived his father. On the 8th day of April, 1872, Amos B. Steele made a deed which was duly executed and delivered, by which he conveyed the land in controversy to W. A. Poindexter, under whom the plaintiffs in error claim title. Amos B. Steele died on the 21st day of October, 1892, leaving surviving him three children, Pearl, the plaintiff in the suit, Ima, and Joseph T. The latter died on the 26th day of December, 1902, unmarried and without issue, his two sisters being his only heirs. The clause of the will of Thomas Steele over which this controversy has arisen is in the following language: "I will and bequeath to my wife, Sarah Steele, as much of my estate as she may need for her comfort and support, through life, both money and property, and my homestead, extra of what is known as her own money and property, together with all my farming utensils, wagons, harness, and as many of the American horses as she may see proper to keep, together with all the household and kitchen furniture that she may choose. She is to be her own judge of the money she may need. The remainder is to remain under her control as long as she is in her right mind and life shall last, together with my administrator when legally qualified; and until that time my wife shall have legal authority to collect my debts or receive any money due me, and at her death, I will to Amos B. Steele all the land that I bought of Joseph Nichols, also the land that I bought of Mr. Patterson, to have and to hold during his natural life, and at his death to his lawful heirs: and I furthermore will that enough of my income be set aside to pay the tax on the aforesaid land until Amos B. Steele becomes of age." The land in controversy is a part of the land mentioned in the foregoing clause of the will.

Pearl Floyd instituted this suit against the plaintiffs in error in trespass to try title to recover the land in controversy, claiming it under the will of Thomas Steele. The question which is presented for our consideration is, does the rule in Shelley's case apply to the clause of the will above copied.

This language: "Also the property known as Amos B. Steele's shall be his own to have and to hold as his own when he becomes of age, but not before," does not destroy the life estate created by the preceding clause of the will. If that language be applicable to the property mentioned in the former clause of the will, it has the effect to do what the law would do without it; that is, to deny to Amos B. Steele, a minor, the power to control his property until after he should arrive at his majority. The effect claimed by counsel for defendants in error for that language would change the character of the estate previously created and violate the rule of construction which requires the language of the instrument to be harmonized, if it can properly be done. We have given to the language quoted the construction most favorable to the defendants in error, but we doubt that it has reference to the property in dispute.

If Sarah Steele had survived her husband, Thomas Steele, the son, Amos B., would have taken under the will a vested right to the future enjoyment of the property after the death of his mother, which would have constituted a contingent remainder. But as the mother died before the testator, the legacy to her lapsed and the will took effect as if the clause which devised to her a life estate had been entirely eliminated, and Amos B. Steele, upon the death of his father, took under the will the right of possession and enjoyment, such estate as was created by the language used, whether it be in fee simple or for life. We come now to the question, what estate was created by tne following language: "I will to Amos B. Steele all the land that I bought of Joseph Nichols, also the land that I bought of Mr. Patterson, to have and to hold during his natural life, and at his death to his lawful heirs." Unless qualified and limited by some other provision or language of the instrument, the words quoted above vested in Amos B. Steele a fee simple title to the land by operation of the rule in Shelley's case. This brings us to the inquiry, what word, phrase, or provision of this will, furnishes ground for a different interpretation of those words? It is said that the testator showed great solicitude for his grandchildren, which is true; but he expressly provided for them in other property, which would tend to show that he did not intend to designate them by the use of the terms "lawful heirs." Looking at that fact—manifested solicitude—from every standpoint, we are unable to find the slightest indication that "his lawful heirs" meant those grandchildren.

It is contended that the use of the words "at his death," in connection with the phrase, "his lawful heirs," designates the persons who were living at the time of his death as "his lawful heirs," and reference is made to Hancock v. Butler (21 Texas, 804) as authority for the position. It is true that some of the language used by Judge Roberts in the discussion of that case might be construed to mean that the words "at his death," qualify the word "heirs;" but a careful examination of the opinion and a reference to the authorities upon which he bases his statements will show that the words "after his death," have been considered with other words and provisions to be pertinent but have not alone been given such effect. In that case Judge Roberts elaborately reviewed the rule in Shelley's case in many of its phases, but finally concluded his opinion with this statement: "What is decided now is, that the words "lawful issue" as they stand in this deed, are words of purchase and not of limitation. No other question having been made none other will be decided." The question was correctly decided in that case, but it was based mainly upon the use of the word "issue" instead of the technical word "heirs." The distinction between that case and this is, that in this case instead of "issue" the word "heirs" is used, to which the rule in Shelley's case is peculiarly applicable. If the words "at his death," designating the time when the party should take, indicate the persons who would then inherit from the life tenant to be the particular class of persons constituting "lawful heirs," then how could the rule in Shelley's case ever be given effect, for every life estate must in regular course terminate at the death of the life tenant, and the

persons designated to take the remainder must take "at his death"—those words furnish no interpretation of "lawful heirs."

The rule in Shelley's case is in force in Texas and has become a rule of property. Upon the faith of that law, many, like plaintiffs in error, have purchased lands, believing they were securing good titles. It may be true that the rule in Shelley's case will defeat the intention of the testator; he should have known the law and could have expressed his intention differently so as to give it effect; but the purchaser had the right to deal with the property upon the presumption that the intention of the testator conformed to the law. The courts have no power to change the law in order to enforce the intention of the testator in disregard of the rights of those claiming under the will.

We believe that it would be for the public good if the Legislature would repeal the rule in Shelley's case, and we respectfully recommend that it be done.

*Reversed and rendered.*