P. K. WALLACE ET AL. V. FIRST NATIONAL BANK OF PARIS.

No. 5383.   Decided February 18, 1931.<br/>(35 S. W., 2d Series, 1036.)

*W. A. Hutchison* and *Beauchamp & Lawrence,* for plaintiff in error.

The clear intention expressed in the will of W. J. Wallace and wife, Betty Wallace, to convey the property in question to the heirs of P. K. Wallace and the language expressing that intention, will not permit the rule in Shelley's case to control and the intention must be respected. There is no inheritable estate conveyed by said will to P. K. Wallace in any of the language thereof and the words "bodily heirs" and "own bodily heirs" can only mean children of P. K. Wallace and are words of purchase and not of limitation. The distributive word "equally" is so used as to preclude the possibility of heirs taking in succession and, therefore, precludes the application of the rule. Hancock v. Butler, 21 Texas, 804; Simonton v. White, 93 Texas, 50; Hunting v. Jones, 215 S. W., 959; Lacey v. Floyd, 99 Texas, 116; Crist v. Morgan, 245 S. W., 659; Darragh v. Barmore, 242 S. W., 714.

The evidence raised the issue under the pleadings as to the homestead right of P. K. Wallace and wife, Ora Wallace, and this issue should have been submitted to the jury. The court committed a reversible error in holding that the issue was not raised and taking the case away from the jury. American Nat'l Bank v. Cruger, 71 S. W., 784; Birdwell v. Burleson, 72 S. W., 446; Hutchenrider v. Smith, 242 S. W., 204; Phillips v. Warner, 15 S. W., 423; Standard Lumber & Mfg. Co. v. Looper, 4 S. W. (2d) 180.

*W. T. Moore* and *Long & Wortham,* for defendant in error.

The rule in Shelley's case is a rule of property in Texas, and under that rule the devise in the will of W. J. Wallace and wife, Betty Wallace, to their son, the defendant, P. K. Wallace, for his natural lifetime, of all their lands, and at his death the same to go to his bodily heirs, carried the fee of said lands to P. K. Wallace, as the first taker, notwithstanding, said will provided that said land should go to his bodily heirs equally, at his death, and, notwithstanding the superadded words in said will, whereby it was declared the intention of said testators that said will was for the purpose of preventing the said P. K. Wallace from disposing of said lands, for the reason that the word "heirs" is a word of limitation and it is not clear that by the use of the superadded words in said will the testators employed the words "bodily heirs" in a different sense than that annexed to them by law. Allen v. Craft, 109 Ind., 476, 9 N. E., 919; Brown v. Bryant, 44 S. W., 339; Bullock v. Waterman Street Baptist Society, 5 R. I., 273; Bradley v. Jones, 37 N. C. (2 Ired. Eq.), 245; Crist v. Morgan, 245 S. W. (Com. App.), 659;

Calder v. Davidson, 59 S. W., 300; C. J., vol. 21, p. 940; Cockin's Appeal, 111 Pa., 26, 2 Atl., 363; Cook v. Sober, 302 Ill., 498, 135 N. E., 60; Darragh v. Barmore, 242 S. W., 741; Doebler's Appeal, 67 Pa., 15; Diamond v. Rotan, 124 S. W., 199; Davenport v. Eskew, 69 S. C., 292, 48 S. E., 223; 104 Am. St. Rep.; Doe ex dem. Ross v. Toms, 15 N. C. (4 Dev. L.), 376; Ewing v. Standefer, 18 Ala., 400; Hancock v. Butler, 21 Texas, 804; Hawkins v. Lee, 22 Texas, 543; Hughes v. Titterington, 168 S. W., 45-48; Hunting v. Jones (Com. App.), 215 S. W., 959; Holt v. Pickett, 111 Ala., 362, 20 So., 432; Jenkins v. Jenkins, 96 N. C., 254, 2 S. E., 522; Knox v. Barker, 8 N. D., 272, 78 N. W., 362; Kennedy v. Kennedy, 29 N. J. L., 185; Kiersted v. Smith, 8 Ohio N. P., 378; Lacey v. Floyd, 99 Texas, 117, 87 S. W., 665; L. R. A., vol. 29 (N. S.), 1158; Moore v. Brooks, 12 Gratt., 135; McNeal v. Sherwood, 24 R. I., 314, 53 Atl., 43; McQueen v. Logan, 80 Ala., 304; O'Brien v. Hilburn, 22 Texas, 617; O'Connor v. Thetford, 174 S. W., 680; Pearce v. Carrington, 124 S. W., 469; id. 104 Texas, 73; 134 S. W., 210; Peters v. Rice, 157 S. W., 1181-1182; Peacock v. McCluskey, 296 Ill., 87, 129 N. E., 561; R. C. L., vol. 24, p. 893; Seay v. Cockrell, 102 Texas, 280, 115 S. W., 1160; Scott v. Brin, 107 S. W., 565; Simonton v. White, 93 Texas, 50, 53 S. W., 239; Stigers v. Dinsmore, 193 Pa., 482, 44 Atl., 550, 74 Am. St. Rep., 702; Stiner v. Kolb, 67 Pa., 123; Swain v. Rascoe (2 Ired. L.), 200, 38 Am. Dec., 720; Simms v. Georgetown College, 1 App. D. C., 72; Texas Co. v. Meador (Com. App.), 250 S. W., 148; Taney v. Fahnley, 25 N. E., 882; White v. Dedmon, 57 S. W., 870; Williamson v. Cowan, 265 S. W., 745; Walker v. Vincent, 19 Pa. St., 371; Watts v. Clardy, 2 Fla., 369.

The evidence showed, as a matter of law, that the premises in suit were not the homestead of P. K. Wallace and wife, Ora Wallace, at the time P. K. Wallace executed the deed of trust thereon to the appellant, and the court, therefore, did not commit error in withdrawing the issue of homestead from the jury.

According to Wallace's own testimony when he left his father's farm in the year 1910 he moved to the incorporated town of Deport and acquired a home there, living there until the year 1919 and engaged in urban pursuits, although it appears that for two or three years after he moved to Deport he also engaged actively in the farming business. After living in the town of Deport until 1919, in his own language, he then says: "I moved to Paris in 1919 in December, I do not remember the date, about the 10th or 15th, somewhere along there. I sold my home in Deport and bought one in Paris on Birmingham street. I bought it from Clifford Wynne." It seems idle to contend that this man who pursued strictly an urban business, living for a number of years in Deport and then selling his home there and at once acquiring another home in

Paris where he continued to live with his family as late as the year 1926, anyway, and who continued to pursue a strictly urban occupation, could claim that all during that time he had a homestead in the country, based primarily upon his occupancy, not later than the year 1910, of a portion of said premises, as a tenant at will.

Upon the proposition that a mere undisclosed intention at some indefinite time to move to a place and occupy it as a homestead is insufficient to impress the premises with a homestead character, see the following authorities: Johnson v. Burton, 87 S. W., 181; Parker v. Cook, 122 S. W., 419; Garcia v. Uveda, 198 S. W., 167; Taylor Feed Pen Co. v. Taylor Natl. Bank, 181 S. W., 534 at 536 and 540; Wolf v. Butler, 28 S. W., 51; Farmers State Bank v. Welch, 279 S. W., 481.

There is some evidence in the record to the effect that about the year 1914, while the premises still belonged to W. J. Wallace, some one brought a bed and placed it in one of the tenant houses on the place, and that P. K. Wallace had some farm tools and things like that on the place. This is wholly insufficient as tending to establish any homestead character in favor of P. K. Wallace in these premises, especially in view of the fact that during all of said time he either had a home in the town of Deport or in the city of Paris. Fort v. Powell, 59 Texas, 321; Moore v. Owsley, 37 Texas, 603; Moerland v. Scottish Mtg. Company, etc., 29 S. W., 162; Walker v. Dailey, 290 S. W., 813.

MR. COMMISSIONER SHARP delivered the opinion of the court.

The parties herein will be designated as they were in the trial court.

The First National Bank of Paris brought this suit in the district court of Lamar county against P. K. Wallace, Morris W. Wallace, Edna L. McDaniel and husband, Shelby McDaniel, and asked for judgment against P. K. Wallace on a promissory note in the sum of $28,400, less a credit of $4,949.78, and also asked for a foreclosure of two deeds of trust; one covering 100 acres of land and the other covering five tracts of land, aggregating 181.7 acres of land. P. K. Wallace executed the note and deeds of trust. There was no defense pleaded against the note or as to the foreclosure of the deed of trust upon the 100 acres of land. The controversy in the suit relates only to the 181.7 acres of land. P. K. Wallace and wife claimed that the 181.7 acres of land constituted their homestead at the date of the deeds of trust and by virtue thereof, the lien was a nullity. Edna McDaniel and Morris Wallace, children of P. K. Wallace, claimed a fee simple title in remainder to the 181.7 acres of land and that their father had only a life estate by reason of the joint will of their grandparents, W. J. Wallace and Betty L. Wallace. After hearing the evidence, the trial court determined that there was no disputed fact for the jury to decide and withdrew the case from their consideration. The court rendered judgment for the plaintiff against P. K. Wallace in the full amount of the note and for a foreclosure of the

lien against the 100 acres and against "the life estate" in the 181.7 acres, further adjudging that the plaintiff take nothing against the other defendants, but that they recover all costs. The plaintiff, bank, and the defendants, P. K. Wallace and his wife appealed from the judgment. The bank objected to that part of the judgment decreeing that P. K. Wallace had a life estate only in the 181.7 acres of land and denying a foreclosure of the lien as against all the defendants. P. K. Wallace and wife objected to the finding and decree against their homestead claim in the 181.7 acres. Upon an appeal to the Court of Civil Appeals the judgment of the district court was modified to the extent of vesting a fee simple title instead of a life estate only in P. K. Wallace in the lands and foreclosing the mortgage lien of the plaintiff on said fee simple title instead of "the life estate" only of P. K. Wallace as against him and all the other defendants. As so modified, the judgment of the trial court was affirmed. We refer to the opinion of the Court of Civil Appeals for a more detailed statement of the case. 13 S. W. (2d) 176.

P. K. Wallace and wife, Mrs. Edna McDaniel and husband, and Morrie Wallace, applied to the Supreme Court for writ of error to review the opinion of the Court of Civil Appeals, which was granted.

It is contended that the Court of Civil Appeals erred in holding that the rule in Shelley's case applied and that the will of W. J. Wallace and Betty Wallace passed to P. K. Wallace a fee simple title to the 181.7 acres of land in controversy.

The material parts of the will executed by W. J. Wallace and wife, Betty Wallace, involved in this suit are as follows:

"First. We direct that the expense of our last sickness, including the expense of our funeral, be first paid and all our just debts be next paid in full.

"Second. That to our son P. K. Wallace we give and bequeath the property known as our homestead, consisting of the lot we now live on and the one known as the Tibbit lot, situated in the Town of Blossom, Texas, to dispose of as he may deem necessary.

"Third. We give and bequeath to our son the said P. K. Wallace, his natural lifetime, all our lands, consisting of farm, pasture and timber lands; and he the said P. K. Wallace is to have the use and benefits of said lands during his natural lifetime, and at his death the same is to go to his bodily heirs equally, the intention of this will being for the purpose of the prevention of the said P. K. Wallace disposing of the lands above mentioned.

"We, the said W. J. Wallace and wife Betty Wallace, desiring to have this property go to his bodily heirs after his death, and not to become the property of any other person or persons whomsoever either before or after his death, other than his own bodily heirs."

The Court of Civil Appeals held that the rule in Shelley's case applied

and that P. K. Wallace took a fee simple title instead of a life estate only and rendered judgment in harmony with that holding.

In volume 3, Bouvier's Law Dictionery, p. 3057, the rule in Shelley's case is defined as follows: "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

A brief history of the rule in Shelley's case, and its recognition and enforcement as a rule by the courts of this state, is not inappropriate. The rule was adopted as a part of the common law of this country, and in many of the states the rule still prevails. However, in many of the states it has been abolished. It has received much discussion in the various decisions rendered by the courts. While it is recognized in this state, the courts have always given it a strict construction. If the facts bring a case under the strict letter of the rule, the courts of this state will apply and enforce it. Our Supreme Court, speaking through Judge Brown, in the case of Lacey v. Floyd, 99 Texas, 112, recommended that it would be for the public good if the Legislature would repeal the rule in Shelley's case. For an exhaustive annotation of the decisions bearing upon the rule, see 29 L. R. A. (N. S.) 963.

We deduce from the decisions rendered in this state with reference to the rule in Shelley's case as applied to wills and other instruments, the following rules:

(a) Every part of an instrument should be harmonized and given effect to, if it can be done. If that cannot be done and it is found that the will contains inherent conflict of intentions, the object of the grant being considered, shall prevail.

(b) If a will, or its parts, are equally capable of two constructions, one consistent with an intention, on the part of the grantor to do that which it was lawful for him to do, and one consistent with an intention to do that which it was unlawful for him to do, the former will be adopted.

(c) The rule that courts will confer the greatest estate on the grantee, that the terms of the grant will permit, is subordinate to the rule "that every part of the will should be harmonized and given effect to, if it can be done."

(d) In a will to a person for the term of his natural life and at his death to his "bodily heirs", the words "bodily heirs" thus employed, if from the entire text of the will it is shown that the words "bodily heirs" were used in the sense of children, are words of purchase and not of limitation.

From the text of the will it will be observed that in the second clause thereof W. J. Wallace and wife gave to P. K. Wallace certain property in fee simple. By the third clause of the will the property in controversy is conveyed for "his natural lifetime and he, the said P. K. Wallace, is to have the use and benefits of said lands during his natural lifetime and at his death the same is to go to his bodily heirs equally, the intention of this will being for the purpose of the prevention of the said P. K. Wallace disposing of the lands above mentioned." The will further provides that it "is to go to his bodily heirs equally," and that it was not to become the property of any other person before or after his death save and except "his own bodily heirs."

The controlling question is, did the will give P. K. Wallace a fee simple title to the 181.7 acres, or did he take a life estate only, with the remainder to his children?

The case of Simonston v. White, 93 Texas, 50, 77 Am. St., 824, involved the construction of a deed from W. J. Gentry to Mrs. Ava A. Simonton. In that deed a conveyance was made by the grantor to the grantee and "her bodily heirs" certain land described therein. The deed further provided:

"* * * Now the above mentioned land and property hereby conveyed is not to be traded or sold, but the produce of the same are to go to the support of the said Ava Anna Simonton and her family during her natural life, and at her death to be equally and impartially divided between her bodily heirs.

" 'To have and to hold the above described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging unto the said Ava Anna Simonton, her bodily heirs forever. And I do hereby bind my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Ava Anna Simonston her bodily heirs against every person whomsoever lawfully claiming or to claim the same or any part thereof.' "

It was contended there, as here, that the rule in Shelley's case applied and that Mrs. Simonton acquired, by reason of the language contained in the deed, the fee simple title to the land described therein. In answer to this contention Judge Brown speaking for the court says:

"Under the rule in Shelley's case, the words 'give and convey unto the said Ava Anna Simonton and her bodily heirs' if not qualified, would vest in Mrs. Simonton an estate in fee simple, not because the grantor intended to convey to her such estate, but because the law gives to the language that effect. Taylor v. Clearly, 29 Gratt., 451. However, that rule does not preclude a construction of the words 'bodily heirs' so as to ascertain the grantor's intention, but the well established doctrine is, if it appears from the instrument that Gentry used the words, 'bodily heirs' to designate children of Mrs. Simonton, effect will be given to that inten-

tion and the estate conferred upon her will be limited to her life with remainder in fee to the children thus pointed out. Doe v. Laming, 2 Burroughs, 1100; Taylor v. Clearly, 29 Gratt., 451; May v. Ritchie, 65 Ala., 602."

After discussing the facts contained in the foregoing deed, he further says:

"The rule in Shelley's case, if applied to this instrument, destroys all of the benefits which were intended to be conferred upon the children and renders the instrument incongruous and contradictory in all of its parts, while the enforcement of the well defined intention of the grantor harmonizes every provision of the deed. We conclude that Mrs. Simonton took an estate for life only with remainder in fee to her children after her death."

In the case of Hancock v. Butler, 21 Texas, 804, the rule in Shelley's case is fully discussed. That case involved the construction of a deed from John Hancock to his son, Josiah Hancock, in which two negroes were conveyed "for the term of his natural life and at his death to his lawful issue forever."

It was also contended in that case that by reason of the language used in the conveyance that the rule in Shelley's case prevailed and that the grantee took a fee simple title to the negroes. Judge Roberts in a very able and exhaustive opinion disagreed with the contention made and held that the rule did not apply in that case. He says:

"What did the grantor intend by the terms of his deed Was that intention lawful? These are the leading inquiries to be made. The governing rule is, that every part of the instrument should be harmonized and given effect to, if it can be done. If that cannot be done, and it is found that the deed contains inherent conflict of intentions, then the main intention, the object of the grant being considered, shall prevail. In either event, the result arrived at must be a lawful one. (Rules in Sheppard's Touch., 83, 84 and 85.) In arriving at the intention of the grantor, what he had a right to do, and what he did not have a right to do, should be taken into consideration: for it is to be presumed that he knew his rights, unless we find something in the deed which leads to a different conclusion. He had a right to give his son the property absolutely, either with or without reference to his issue. He had a right to give to his son, Josiah, a life estate only, and connect with it a gift of the absolute property, to take effect at the time of Josiah's death, to persons then in being, answering the description of Josiah's issue.

"He had no right to create a perpetuity, by which he would tie up the property from alienation longer than a life or lives in being, and twenty-one years.

"He had no right to entail the property by giving it to Josiah and his

issue, to take in a line of succession after one another, contrary to the general laws of descent and distribution.

"He had no right (terms are used applicable to real estate, so as to convey the idea) to reduce the estate, conferred on Josiah, to a life estate, if in the same deed he made the issue of Josiah derive an estate in fee or fee tail from and through Josiah, as his heirs, by descent.

'Now, if this deed, or its parts, are equally capable of two constructions—one, consistent with his having intended to do that which it was lawful for him to do—and one, which is consistent with his having intended to do that which it was unlawful for him to do—the former will be adopted.

"The part of the deed, which expressly indicates the interest which Josiah Hancock is intended to take, is plain, and not even capable of being made dubious: 'I give unto Josiah Hancock (the slaves) for the term of his natural life.' If the deed went no further, or if the full property in the slaves had been given, after that, by the same or another deed, over to the issue of some one else, there could be no doubt that Josiah only took a life estate."

He further says:

"It is presumed it would be difficult to find one case where a man had expressly given his property, to all his descendants, to take per capita— children, grand-children, great grandchildren, etc. The general sense of American mind, as exhibited in deeds, wills, and in Statutes of descent and distribution, is that it is proper to give property to children, grand-children, etc., they taking per stirpes. So we may well presume, in this case, that such persons were meant. They would be the same persons usually designated by the words, 'heirs of the body.' "

Again in the course of his opinion, he says:

"The rule, then, that Courts will confer the greatest estate on the grantee that the terms of the grant will permit, must necessarily be subordinate to the rule 'that every part of the deed should be harmonized and given effect to, if it can be done.'

"If then in this gift to Josiah Hancock, 'for the terms of his natural life, and at his death to his lawful issue forever, the word issue can be read as a designation of persons, to take at his death, every word and sentence of the deed will be given effect to, and both Josiah, and those persons after him, will take as purchasers.

"To presume it to have been used in another sense, is to erase out of the deed one whole sentence plainly expressed, towit: 'for the term of his natural life:' is to make the donor do that which is in violation of law, in making an estate tail; (which will not be readily presumed. See Robert v. West, 15 Ga., 145-6;) and is in direct violation of the manifest intention of the donor. And all this upon a presumption that

issue is used in a sense 'which it has not naturally.' (Moss v. Sheldon, 3 Watts & S., 160.)"

The rule announced in the case of Hancock v. Butler and Simonton v. White, supra, is approved in the case of Hopkins v. Hopkins, 103 Texas, 15. That case involved the construction of a deed which contained the words "heirs", "issue" and "children", and it was contended that the rule in Shelley's case prevailed. The Supreme Court did not agree with that contention. Judge Williams, after analyzing the facts in the case, tersely correctly states the rule to be as follows:

"According to the principle uniformly applied by this court in this very connection, the construction which carries into effect the intention, where that is lawful, is to be adopted in preference to that which defeats it. (Hancock v. Butler, 21 Texas, 804; Simonton v. White, 93 Texas, 50, 77 Am. St., 824.)

"That by 'children' and 'issue' the grantors did not mean 'heirs' in the general sense essential to the application of the rule in Shelley's case, is indicated by the phrase, 'at his death,' which designates those persons of the class intended then living who are safe to take the fee by purchase and not by inheritance. (Hancock v. Butler, supra, at p. 817.) Those words properly are words of purchase, and in order to treat them as words of limitation such use of them must clearly appear. The words, heirs, can not be held to have that effect when the instrument shows, as we think this does, that it is the one mistakenly used."

The rule announced by the Supreme Court in Hancock v. Butler, supra, is again cited and approved in an opinion by the Commission of Appeals, speaking through Presiding Judge McClendon in the case of Hunting v. Jones, 215 S. W., 959, which opinion was adopted and entered as the opinion of the Supreme Court.

In applying the foregoing rules to the facts of this case, it must be kept in mind always that the intention of the testator, where it is legal, must prevail. It is a question of intention depending on the terms of the instrument construed in connection with the surrounding circumstances. Returning to the language of the will, we find that it is provided that P. K. Wallace was conveyed the property for "his natural life time" and furthermore "at his death the same is to go to his bodily heirs equally" and it is further provided that "the intention of this will being for the purpose of the prevention of the said P. K. Wallace disposing of the land." The testator did not rest his will upon the foregoing language but further stipulated that the testator desired "to have this property go to his bodily heirs after his death" and that it was not to become property of any other person before or after his death, save and except "his own bodily heirs." We think it plainly appears from a careful reading of the entire will, with such light as the surrounding circumstances may show, the testator throughout used the words "bodily heirs"

in the sense of children. It is quite manifest that the clearly expressed intention in the will creates a life estate only; the use of distributive words in connection with bodily heirs; the indicated use of bodily heirs as words of purchase and the qualifying distributive words added to bodily heirs, plainly expresses to our mind that the testator intended to create a life estate only in P. K. Wallace and the remainder in fee to go to his children. If the word "children" be substituted for the words "bodily heirs" wherever they appear, the entire will and all of its parts is harmonized and the plain and manifest intention of the testator is carried out.

It will not be amiss to call attention to the bold and striking language used by Judge Roberts in the case of Hancock v. Butler, supra, against the right of a grantor or testator "to create a perpetuity" or "the right to entail the property" or "the right to reduce the estate to a life estate", under the conditions stated in the opinion, and he draws a distinction between the political and judicial connections existing in England and in this country. While the language used by Judge Roberts in the foregoing opinion is strong and emphatic, it is matched with equally as strong and emphatic language in section 26, article 1, of the Constitution of Texas, which reads as follows:

"Perpetuities and monopiles are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniuture or entailments ever be in force in this State."

To hold that the rule in Shelley's case applies here, would be contrary to the authorities above cited and in violation of the clearly expressed intention of the testator to give the life estate only to P. K. Wallace and the remainder in fee to his children. Therefore, the Court of Civil Appeals erred in so holding.

Since this case will be reversed and remanded for another trial, we desire to call attention to another question raised by this record. Both the trial court and Court of Civil Appeals held that as a matter of law P. K. Wallace did not have a homestead right in the land in controversy. To this holding we do not agree. Without setting out in detail the testimony offered upon this issue, we think it sufficient to raise the question as to whether or not P. K. Wallace had impressed the premises with a homestead character. This raises a fact question to be determined.

The courts of this state have held, and it is now undoubtedly the settled rule, that the homestead laws are to be liberally construed to effectuate their beneficent purposes. Woods v. Alvarado State Bank 118 Texas, 586, 19 S. W. (2d) 35; Gunn v. Wynne, 42 S. W. (Civ. App.), 290 (writ denied); Birdwell v. Burleson, 31 Texas Civ App., 31, 72 S. W. (Civ. App.), 445 (writ denied); Woodward v. Sanger Bros., 246 Fed., 780; Cocke v. Conquest et al., 120 Texas, 43.

We, therefore, conclude that both the judgments of the trial court and the Court of Civil Appeals should be reversed and this cause

remanded to the district court for another trial in accordance with this opinion.

The foregoing is adopted as the opinion of the Supreme Court, and the judgments of the Court of Civil Appeals and the trial court will be reversed, and this cause remanded to the district court for another trial.

C. M. CURETON, Chief Justice.