ED SYBERT ET AL V. EUNICE SYBERT.

No. A-3803. Decided February 18, 1953.
(254 S. W. 2d Series 999)

*McClain & Gauntt,* and *C. E. Gaunt,* all of Georgetown, and *Wofford, Fullerton & Barkley* and *W. C. Wofford,* all of Taylor, for petitioners.

*S. E. Wilcox, Jr.,* of Georgetown, for respondent.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

The sole question for decision is the applicability of the rule in Shelley's Case to a devise in the will of J. H. Sybert. Mr. Sybert died February 4, 1942, leaving a will, which was duly probated, and by which he left all of his property to his wife, Mrs. Cora R. Sybert, for life "and after the death of my said wife I will and bequeath to my five (5) sons the following described pieces and parcels of land, to wit: '(a) To my son Fred Sybert I will and bequeath the following described tract of land (a life estate only, to manage, control and use for and during the term of his natural life, and after the death of my said son, Fred Sybert, to vest in fee simple in the heirs of his body) * * *.' " This language was followed by a metes and bounds description of the tract of land in suit. Later, Mrs. Cora R. Sybert died, leaving a will, which was duly probated, disposing of this land in the same manner and by the identical words copied above from the will of Mr. Sybert. Fred Sybert, the son to whom the land was devised, died childless and intestate on July 3, 1950, survived by respondent, his wife, Eunice Sybert. Two of his brothers are petitioners. Their contention is that the will vested a life estate only in Fred Sybert, while respondent contends that the rule in Shelley's Case operated to vest a fee simple estate in him. Her contention was sustained by the trial court and its judgment was affirmed by the Court of Civil Appeals. 250 S. W. 2d 271.

There is no need for us at this late date to write a dissertation on the history and rationale of the ancient rule in Shelley's Case. It has perhaps been the subject of more writing in opinions, textbooks and law reviews than any other rule of property. Attorneys for petitioners, who have made an exhaustive and enlightening study of this subject, recognize that it is a positive rule of law in this State and not a rule of construction, and that, therefore, any abrogation of the rule must be made by the Legislature and not by the courts. The Legislatures in a majority of the states have abolished the rule in whole or in part, and it appears that in one state, Vermont, it was abolished by judicial decree. However, as observed in American Law of Property, Vol. 1, § 4.51, "The rule appears to be still in force in Arkansas, Delaware, Illinois, Indiana, North Carolina, Texas, and probably a few other states."

The rule in Shelley's Case has been variously stated. Since this court at an early date adopted Kent's definition, we need not substitute another one for it, even though some of the more modern expressions of the rule are stated in somewhat clearer language. We quote the rule from a landmark case, Hancock v. Butler, 21 Texas 804, 808:

" '* * * when a person takes an estate of freehold, legally, or equitably, under a deed, will, or other writing, and in the same instrument, there is a limitation, by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons, to take in succession, from generation to generation, the limitation to the heirs entitles the ancestors to the whole estate.' 4 Kent, 215. This result would follow, although the deed might express that the first taker should have a life estate only. It is founded on the use of the technical words, 'heirs,' or 'heirs of his body,' in the deed or the will.

"The rule in Shelley's case is said to be a rule of law. It is really an organic rule, entering into the creation of the estate of inheritance."

The rule must inevitably apply in the instant case unless there is language qualifying the words "heirs of his body," showing that they were not used in their technical sense, that is, to signify an indefinite succession of takers from generation to generation. Turning now to an examination of the particular provisions of the will under construction we find that the only

qualifying words contained therein modify the estate of Fred Sybert—not the words "heirs of his body." The language "a life estate only, to manage, control and use for and during the term of his natural life" is but a statement of the incidents of a life estate. The further language "and after the death of my said son, Fred Sybert, to vest in fee simple in the heirs of his body" does not indicate that the words "heirs of his body" were not used in their usual and technical sense. The expressions "vest in the heirs" and "vest in fee simple in the heirs" are identical in meaning. Crist v. Morgan, 245 S. W. 659 (Comm. App.); Brown v. Bryant, 17 Texas Civ. App. 454, 44 S. W. 399, writ refused. We concur in this conclusion of the Court of Civil Appeals: "We have diligently searched the wills of Mr. and Mrs. Sybert for some 'explanatory context,' qualification or modification of the words 'the heirs of his body,' as used in the wills, but none are present."

Petitioners place much reliance upon Wallace v. First National Bank of Paris, 120 Texas 92, 35 S. W. 2d 1036, and Robinson v. Glenn, 150 Texas 169, 238 S. W. 2d 169. The instruments construed in those cases are clearly distinguishable from the will before us. In the Wallace case the remainder was "to his bodily heirs equally," and it was held that the word "equally" qualified the word "heirs." We do not question the soundness of that holding. It is in line with the holdings in Simonton v. White, 93 Texas 50, 53 S. W. 339, and Hunting v. Jones, 215 S. W. 959 (Comm. App.).

In Robinson v. Glenn two deeds were before us for construction. In one the remainder was "to the issue of her body" and we held that "issue" was a word of purchase, meaning children. That holding is in line with Hancock v. Butler, supra. In Lacey v. Floyd, 99 Texas 112, 87 S. W. 665, the holding of the court in Hancock v. Butler is stated in this language:

"In that case Judge Roberts elaborately reviewed the rule in Shelley's case in many of its phases, but finally concluded his opinion with this statement: 'What is decided now is, that the words "lawful issue" as they stand in this deed, are words of purchase and not of limitation. No other question having been made, none other will be decided.' The question was correctly decided in that case, but it was based mainly upon the use of the word 'issue' instead of the technical word 'heirs.' The distinction between that case and this is, that in this case instead of 'issue' the word 'heirs' is used, to which the rule in Shelley's case is peculiarly applicable."

In the other deed contsrued in Robinson v. Glenn the remainder was to "her bodily heirs, share and share alike." We held that "share and share alike" qualified the word "heirs" and took the case from out the rule. That holding is in accord with Calvery v. Calvery, 122 Texas 204, 55 S. W. 2d 527.

This court has said that the rule in Shelley's case should be strictly construed. That is but to say that it should not be extended to apply to any instrument the language of which does not bring it within the rule as heretofore construed by this court. The language in the will in this case brings it squarely within the rule, and whether or not the testator so intended is immaterial. While the court may be liberal in construing explanatory language so that the words "heirs" or "heirs of his body" will not be read in their technical sense, we cannot supply that language when it is omitted from the instrument itself.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered February 18, 1953.

MR. JUSTICE GRIFFIN concurring.

Under the well settled decisions of this Court there is no question but that the wills under construction come within the Rule in Shelley's Case, and that we cannot decide this cause in any other manner than to affirm the judgments of both courts below.

This cause forcibly points out the anomaly brought about by the Rule in Shelley's Case. That rule is a relic, not of the horse and buggy days, but of the preceding stone cart and oxen days. The Rule was devised in feudal times to insure feudal landlords the receipt of their rents from their feoffs, or tenants. The reason for the Rule has long since passed, and it should be repealed.

A reading of these two wills can leave no doubt that it was the intention of these two testators to leave a life estate only in these lands to their son, Fred Sybert. The application of the Rule in Shelley's Case results in setting aside this intention of these testators. In fact, every case in which the Rule in Shelley's case is applied results in setting aside the intention of the person making the instrument. No one intending to give a fee simple title to the first taker (generally called the ancestor) ever uses

language that, in its ordinary meaning and significance, defines an estate for life only. This Rule is only a trap and snare for the unwary, and should be repealed.

England, where the Rule had its inception, repealed the Rule some thirty years ago. As of 1948, thirty-seven of the states in our own union have set aside the rule. In our own state the courts apply the Rule only when there is no escape from it.

Repeal is the duty of the legislative branch of our government, and the judiciary cannot legislate by refusing to follow the Rule. The Rule in Shelley's Case is a rule of property under which many citizens own property, and under its application titles have been passed and approved. For the courts to refuse to follow it in a case such as we have here would endanger all such titles and create uncertainty and endless confusion. The Legislature can remedy the situation by legislation to take effect at some definite future date, and secure all titles held by virtue of the Rule prior to the effective date of such act. By so doing, the Courts will be able to give effect to the clear intention of those making instruments affecting title to real estate. I think this should be made possible.

Opinion delivered February 18, 1953.