**Thelma Lowe ECHART et al., Appellants,**

v.

**E. G. SENTER & COMPANY et al.,
Appellees.**

No. 17262.

Court of Civil Appeals of Texas,
Fort Worth.

Nov. 19, 1971.

Rehearing Denied Dec. 17, 1971.

English & English, Arlington, Cantey, Hanger, Gooch, Cravens & Munn, Frank G. Young, and Jack C. Wessler, Fort Worth, for appellants.

Crawford C. Martin, Atty. Gen. of Texas, Austin, DeVore, Bagby, McGahey, Ross & Burnett, Arlington, Owens & Fortney, and Richard Owens, Fort Worth, for appellees.

OPINION

BREWSTER, Justice.

E. G. Senter & Company and The State of Texas, appellees, sued Thelma Echart to construe the wills of T. J. and Allie Mohundro claiming that under such wills Ethel Lowe acquired the fee simple title to a certain 87 acres of land in Tarrant County and that appellees had acquired the title to such land by a chain of conveyances originating with Ethel Lowe. They alleged that Thelma Echart was claiming title to a ⅙ interest in such land.

The plaintiffs also sued in trespass to try title, each asserting title to a part of the 87 acre tract.

Edith Lowe (Cook) Callia intervened alleging that she owned a ⅙ interest in the land.

The common source of title to the land involved was T. J. Mohundro and wife, Allie. T. J. died February 9, 1938, leaving a will, which was probated in February, 1938, that contained the following provision: "Fourth. I give, devise and bequeath to my beloved daughter, Ethel Lowe, after the death of my said wife, Eighty Seven acres of land, . . . (here follows the description) to have and to hold the same for and during the term of her natural life, and upon her decease to the heirs of her body, according to the Statutes of descent and distribution, in fee simple."

Allie Mohundro died in May, 1949, leaving a will, which was probated in June, 1949. Paragraph 4 of her will contained the same provisions as did paragraph 4 of her husband's will, such paragraph being above set out.

Ethel Lowe, the devisee referred to in each of the Mohundro wills, was married only one time and that was to I. W. Lowe. They had six children, and among them were the defendant, Thelma Echart, and the intervenor, Edith Lowe (Cook) Callia.

In 1950 Ethel Lowe, the devisee named in the wills, and her husband, I. W. Lowe, by general warranty deed, conveyed the entire 87 acre tract to A. V. and Cleo Smith, who in 1955 conveyed the tract to the plaintiff, E. G. Senter & Company. By deed in 1970, E. G. Senter & Company conveyed 30.591 acres of the tract to the State of Texas.

In 1954 the four children of Ethel Lowe, whose names we have not listed, properly conveyed all their right, title and interest in the 87 acre tract to their mother, Ethel Lowe. These four children are not involved in this case.

In 1954 the intervenor, Edith Lowe (Cook) Callia, executed a deed conveying all of her right, title and interest in the 87 acres to her mother. At the time of the conveyance she was the wife of one T. J.

Cook and he did not join in the conveyance.

The appellant, Thelma Echart, has never executed any conveyance at all to her mother or to anyone else.

The appellees' position is that the Rule in Shelley's case applied to the devise contained in paragraph 4 of each of the Mohundro wills and resulted in Ethel Lowe getting the fee simple title to the 87 acre tract by virtue of such bequests.

The appellant, Thelma Echart, contends that the Rule in Shelley's case did not apply to such bequests and that her mother, Ethel Lowe, only acquired a life estate in the tract, with the title to a ⅙ interest in the remainder being vested in Thelma Echart.

Ethel Lowe is still alive.

Edith Lowe (Cook) Callia contends that the deed she made to her mother in 1954 is invalid because of the fact that her then husband did not join her in making the conveyance. She contends that the Rule in Shelley's case did not apply to the bequest and that the will therefore devised her a ⅙ interest in the remainder to the 87 acre tract which she still owns in view of the fact that her 1954 conveyance to her mother is invalid.

The trial court held that the Rule in Shelley's case applied to the bequests and that Ethel Lowe received the fee simple title to the 87 acres under the wills of T. J. and Allie Mohundro and therefore rendered judgment awarding title and possession of the property to the appellees. This appeal is from that decree. The trial court also held that the 1954 conveyance executed by Edith Lowe (Cook) Callia was valid because she was at the time of executing the deed permanently separated from her husband, Cook.

We affirm.

Appellants' first point is that the court erred in holding that the Rule in Shelley's

case applied to the Mohundro wills. We overrule the point.

The Rule in Shelley's case is stated in Sybert v. Sybert, 152 Tex. 106, 254 S.W.2d 999 (1953) and in Hancock v. Butler, 21 Tex. 804 (1858) as follows: ". . . 'when a person takes an estate of freehold, legally, or equitably, under a deed, will, or other writing, and in the same instrument, there is a limitation, by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons, to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate.' 4 Kent, 215. This result would follow, although the deed might express that the first taker should have a life estate only. It is founded on the use of the technical words, 'heirs,' or 'heirs of his body,' in the deed or the will.

"The rule in Shelley's case is said to be a rule of law. It is really an organic rule, entering into the creation of the estate of inheritance."

■ The Rule is briefly and a little more simply stated in 31 C.J.S. Estates, § 4, p. 14, as follows: "Under the rule in Shelley's case, a limitation of an estate to an ancestor for life, with remainder to his heirs or the heirs of his body, gives the whole estate in fee to the ancestor."

Even though the Texas Legislature did in 1963 enact Art. 1291a, Vernon's Ann. Civ.St., which abolished the Rule in Shelley's case, such Rule was the law in Texas and was in full force and effect at the time the last of the Mohundro wills was admitted to probate in 1949. Dallmeyer v. Hermann, 437 S.W.2d 367 (Houston Civ. App., 1969, no writ hist.).

There is a lengthy discussion of the Rule in Shelley's case in 3 Tex.Law Rev. 109 wherein the requisites for the operation of the Rule are listed as follows:

"1. The estate in the ancestor must be a freehold. It is usually spoken of a life estate, . . . .

"2. The estate limited to the heirs must be limited by way of remainder.

"3. The conveyance to the life taker and the apparent remainder to the heirs must be in the same instrument. . . .

"4. The apparent remainder must be in the heirs of the life taker. . . . Other words may be used and the rule apply. In such case the words used are given the technical meaning of heirs."

■ We are convinced that the case before us is a typical case for the application of the Rule in Shelley's case. Every element that is necessary for its application under the definitions above listed and under the above law review discussion are present in this case. It is a much simpler and clearer case for the application of the Rule than are some of the cases to which we have been cited.

The Rule in Shelley's case apparently originated about 1325 and much has been written on it, and in view of the settled state of the law relative to it, we could add nothing to the State's jurisprudence by undertaking a lengthy discussion of the problems involved in this case. See Crist v. Morgan, 245 S.W. 659 (Tex.Com.App., 1922), wherein the Rule and its application are discussed at length.

We are cognizant of the fact that a number of cases have announced the doctrine that the Rule in Shelley's case is not favored in Texas, but such cases also hold that if the facts of the case are such that the Rule is applicable, then it must be given effect by the courts. Dallmeyer v. Hermann, supra.

On this point the Supreme Court said in 254 S.W.2d at page 1001 of the opinion in Sybert v. Sybert, supra, the following:

"This court has said that the rule in Shelley's Case should be strictly construed.

That is but to say that it should not be extended to apply to any instrument the language of which does not bring it within the rule as heretofore construed by this court. The language in the will in this case brings it squarely within the rule, and whether or not the testator so intended is immaterial. While the court may be liberal in construing explanatory language so that the words 'heirs' or 'heirs of his body' will not be read in their technical sense, we cannot supply that language when it is omitted from the instrument itself."

All parties admit that no part of the wills involved here are ambiguous.

There is no question but what it is apparent from the language used in said wills that the intention of the Mohundros was to grant only a life estate to Ethel Lowe.

Appellants' position is that since the Rule in Shelley's case is disfavored and since it is apparent that the makers of the wills intended to devise to Ethel Lowe only a life estate that we should construe the will in such a way that the Rule would not apply.

We have examined the wills involved to see if there were therein used any qualifying words that indicate that the testator used the words "the heirs of her body" in any other than their ordinary or technical sense and find that there are none. No other words used in either of the wills pertain to the bequest made in paragraph 4 of such wills other than the words contained in that particular paragraph and we have hereinabove set them out.

The following is from 245 S.W. page 663 of the opinion in Crist v. Morgan, supra: "Under all the authorities in this state . . . the language of this will brings the case clearly within the rule in Shelley's Case, and requires vesting the fee in the living nieces and nephews, regardless of a clearly expressed intention of the testator to grant to them only a life estate. Rules for the construction of words in instruments of this character do not permit of resort to mere supposition in order to determine the intention of the author of the instrument. There must be something more than this; something tangible upon which to base a positive assertion that there is a manifest intention on his part not to use the words in their ordinary or technical sense. . . . We are therefore left no alternative but to conclude that the words 'heirs at law' and 'heirs' cannot be given any other meaning than that in which they are technically understood in law, and as such words of limitation or inheritance, and not words of purchase." And at page 664 of the opinion the Court said: "Courts are not at liberty to set aside or construe away established rules of law which have become rules of property, whether or not they may feel that those rules are unsound in principle and should not originally have been adopted."

What that court said is applicable to this case.

If paragraphs 4 of the Mohundro wills had stated simply that "I give and bequeath to my beloved daughter, Ethel Lowe, the 87 acres of land to have and to hold the same for and during the term of her natural life and upon her decease to the heirs of her body", and stopped there, we would have before us a textbook example of the type of bequest to which the Rule in Shelley's case applies. See Sybert v. Sybert, supra.

The Mohundro wills contain the same bequest that we have just set out but have added to it these additional words, "according to the Statutes of descent and distribution, in fee simple."

We hold that the addition of these words in no way changed the bequest of the remainder or qualified it in any way. A bequest worded either of such ways would have the same legal effect because a person's heirs are those who are named in the statute of descent and distribution to receive his estate when he dies intestate. Section 3(o), Probate Code, V.A.T.S.;

Ladd v. Whitledge, 205 S.W. 463 (Amarillo Civ.App., 1918, writ ref.); and Faulkner's Guardian et al. v. Faulkner et al., 237 Ky. 147, 35 S.W.2d 6 (1931).

We hold that the trial court correctly held that the Rule in Shelley's case applied to the bequest of the 87 acres contained in paragraph 4 of the Mohundro wills and that by virtue of such bequest the fee simple title to the 87 acre tract was devised to Ethel Lowe. The defendant, Thelma Echart, and intervenor, Edith Lowe (Cook) Callia therefore never acquired any interest in the remainder by virtue of such bequest.

Appellants' second point is that the court erred in holding that the deed from Edith Lowe (Cook) Callia to Ethel Lowe was valid. We overrule that point also.

On this question the court found in paragraph 17 of the judgment that on October 26, 1954, the date of the execution of her deed in question, the intervenor, Edith Lowe (Cook) Callia, was permanently separated from her then husband, T. J. Cook, and had been so permanently separated from him since October of 1953.

If there was evidence in the record sufficient to support this finding then the court's conclusion that this deed was valid is correct because if the intervenor at that time did own an interest in the land, it was her separate property and she could execute a valid conveyance of it, without the joinder of the husband, if she was at that time permanently separated from her husband. Hearne v. Bradshaw, 158 Tex. 453, 312 S.W.2d 948 (1958) and Webb v. Webb, 148 Tex. 405, 224 S.W.2d 868 (1949).

The record contains evidence bearing on the question of whether or not intervenor was on the date of executing the deed on October 26, 1954, permanently separated from her then husband, Cook, as follows: when she married Cook in 1952 he was in the Air Force; he was sent overseas 6 weeks later and stayed about a year; when he came back to the United States he was sent to New Mexico; she could have gone there with him but chose not to do so; instead, she went to Louisiana and lived there with her sister. She and Cook separated in October, 1953, and talked in anger of getting a divorce; she and Cook never saw each other again at all after December, 1953, and in December of 1955 she filed a divorce suit in Louisiana against Cook and the divorce was granted on January 23, 1956; in that case she filed a petition which she swore to wherein she alleged under oath that as of December 1, 1953, she was domiciled in Louisiana and that on or about October 6, 1953, she and Cook voluntarily separated and continued to live apart from that time until the divorce case was filed and that they had not reconciled or cohabited together since they separated in October, 1953.

This evidence was sufficient to sustain the court's finding that the intervenor was in fact permanently separated from her then husband, Cook, on October 26, 1954, at the time she executed the deed.

The deed was therefore valid, and even if the Rule in Shelley's case had not applied to the Mohundro wills, the court's judgment against intervenor in this case would still be correct, because this valid October 26, 1954, deed would have divested her of any interest that she might have otherwise had in the 87 acre tract.

The judgment is affirmed.