HOEFS et al. v. SHORT. (No. 501.)

(Court of Civil Appeals of Texas. El Paso. June 17, 1915.)

1. WATERS AND WATER COURSES ⟐121—RIPARIAN RIGHTS—SURFACE WATERS—STATUTORY PROVISIONS.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 4991–5011s, providing that the unappropriated waters of any stream and storm or rain waters of every stream, ravine, depression, or watershed shall be the property of the public, and may be acquired by appropriation, owners of land through which rain waters, having their source in other lands, flow, have no riparian rights in the waters, but the waters become the property of the first appropriator.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 136; Dec. Dig. ⟐121.]

2. WATERS AND WATER COURSES ⟐126—SURFACE WATERS—APPROPRIATION—STATUTORY PROVISIONS.

Act April 19, 1913 (Acts 33rd Leg. c. 171, § 12 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4996]), provides that every person who shall have constructed any dam or other work shall file a verified statement showing the number of acres of land that will be irrigated, the point at which the headgate is situated, the carrying capacity of the ditch, and with map showing the route of the ditch. An individual and a com-

pany filed a verified statement that they had partially constructed dams and other works for irrigation, declaring an appropriation of waters as of the date of the beginning of the work at a prior specified time, describing the location of the headgates and the capacity of the ditches, and averring that the water was to be taken from a dam at the respective headgates, and that the dam would divert flood waters. The map accompanying the statement showed two headgates and the accompanying verified statement showed that the two dams were parts of one system, and that the waters diverted at the second dam were waters released at the first through a flume. *Held* to show a single appropriation of the waters to the exclusion of an owner of land below.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 139, 141, 142; Dec. Dig. ☞126.]

Appeal from District Court, Reeves County; S. J. Isaacks, Judge.

Action by J. C. Short against Otto Hoefs and others. From an order granting a temporary writ of injunction against defendants, they appeal. Injunction dissolved and cause reversed and remanded.

Clay Cooke, of Pecos, for appellants. Ross & Hubbard, of Pecos, for appellee.

HIGGINS, J. Short filed this suit against Otto, Rudolph, Edwin, and Arthur Hoefs. Those portions of his petition material to a consideration of this appeal are as follows:

That plaintiff was the owner of section 58, in block 13, H. & G. N. Ry. Co. survey in Reeves county, Tex., which was crossed by an intermittently flowing stream known as Barella creek, and that his said land was riparian to said stream, within the watershed thereof, abutted upon and was crossed by said stream, and by reason thereof, his land was entitled to the use of the waters of the stream for irrigation purposes. That Barella creek is a creek which flows intermittently, fed by rainfall collected within its watershed, which watershed extends over a large area in the foothills and mountains south of plaintiff's land. That when the creek flows it flows in a well-defined channel, with well-defined banks, from a point south of his land, said well-defined bed, channel, and banks extending to a point one mile distant below and to the north of his land. That for many years there has been maintained a dam across the creek known as the "U" dam, located about two miles south of his lands, near the south line of section 24, block C-16 public school land and upon either section 24 or section 13 in block 1, H. & T. C. Ry. Co. survey, and the waters collected and diverted by said dam have for many years been so used as to permit the residue thereof after their use for stock watering and irrigation to flow back into the channel of the creek south of plaintiff's lands, and all of the waters of the creek have been accustomed for many years to flow to and across his lands, except such part thereof as was diverted and used by reason of the U dam.

That on February 7, 1914, he filed his application with the board of water engineers of the state of Texas to appropriate from public waters of the state of Texas a certain amount of water to be diverted from said creek, an ordinarily dry stream, by means of a diversion dam located on his land for the purpose of irrigation, the water appropriated to be diverted by means of such diversion dam at such times as flood or storm waters flowed down the creek, and on April 9, 1914, said board granted him a permit to appropriate and use an amount of the public waters of the state from the flood waters of Barella creek, not to exceed 1,920 acre feet per annum, which permit provided that the privileges granted thereby were subsidiary to the rights of any appropriators of water from the same source who began or completed any storage or irrigation plant and diverted any water prior to July 1, 1913, for any of the purposes prescribed by law and who filed a record of such appropriation with said board prior to July 1, 1914. That he began the work of construction and completed the dam within the time limited by the permit and same was constructed across the creek at or near the southerly boundary line of his section where the creek enters his land. That the appropriation was made and the dam constructed for the purpose of diverting the waters of the creek to his lands for the purpose of irrigation.

Allegations then followed showing the irrigation purposes for which he proposes to use the water upon his land and showing a necessity therefor, and that he had no other means of irrigating same. It was further alleged: That his land was located in the arid or semiarid portion of the state in which irrigation was beneficial and necessary for agricultural purposes and without which crops could not be successfully grown or cultivated. That Otto Hoefs was the owner of a section of land lying between plaintiff's land and the U dam, and he and his codefendants threaten to construct, and are constructing, a dam on the intervening land of Otto Hoefs and have commenced the construction of a canal leading therefrom to the west of plaintiff's land and along its western boundary to other lands owned by the defendants which are not contiguous to the creek nor crossed by same and not riparian thereto. That the dam of defendants, if allowed to be completed or allowed to remain as constructed, will divert the flood waters of the creek into said canal, leading the water away from the creek, and from plaintiff's lands onto and across the lands of defendants, to wit, sections 325 and 330, which are neither contiguous nor riparian to the creek. That the defendants were without legal right to interfere to divert or impede the waters of the creek in their flow to plaintiff's lands, and had made no application to said board of engineers for a permit so to do, and if applica-

tions should thereafter be made, their right to the use of said waters thereunder which may be acquired, would be subordinate to the right acquired by the plaintiff under his permit and appropriation aforesaid. That if defendants are not enjoined from the construction and completion of said dam and canal and from maintaining the same, plaintiff's permit and water appropriation and lands would be rendered valueless, to his great damage; wherefore, he prayed for an injunction enjoining the defendants from withholding any of the waters of Barella creek by means of said dam until he had received the waters thereof to which he was entitled under his appropriation and permit, and that they be enjoined to remove such dam as they have now under construction, or have constructed, or are constructing so as to allow plaintiff's water to flow down the creek to plaintiff's dam.

The defendants answered, in substance alleging: That section 58 was not crossed by an intermittently flowing stream, and that the stream alleged by plaintiff to cross same is nothing more or less than a spread out or a depression where waters from rains collect, and said stream has no source, no well-defined banks, no bed, and no channel. That about the year 1899, the Wilson-Popham Cattle Company constructed a dam across the said Barella draw about 50 feet south of section 24, block C-16, known as the "U" dam, and ever since that date all of the rain waters have been held up and diverted at said dam and long prior to the time plaintiff acquired his land. That said waters were actually appropriated by Otto Hoefs and the said company, and applied to irrigation of their lands long prior to the time plaintiff acquired his land from the state of Texas, and at the time of the acquisition by plaintiff of his land from the state all of the rain waters occasionally flowing in said draw had been appropriated and diverted by said company and defendants and used for beneficial purposes and there was not at said time any unappropriated waters in the draw subject to appropriation by plaintiff. That said dam is above the lands of plaintiff and defendants. That they are the owners of and in possession of sections 323, 320, 326, 329, 330, 328, and 37, in block 13, H. & G. N. Ry. survey. That section 323, upon which is located the diversion dam complained of, was patented to said railway company by the state January 5, 1874, and long prior to the time at which the Legislature attempted to reserve any rain waters or other waters flowing across said section, and that sections 58 and 329 were patented by the state long prior to the passage of said act of the Legislature under which the plaintiff claims. That they acquired all their land, and their predecessors in title acquired same, long prior to the passage of the act of the Legislature attempting to reserve rain waters flowing across said lands, and the title and right of possession to said lands and the right to use and divert the rain waters flowing across the same, and said lands belonged to and were the property of defendants and those under whom they claim long prior to the passage of the act under which the plaintiff is attempting to claim the waters, and same were actually diverted by the defendants long prior to the passage of the act and to the taking of any steps by plaintiff in an endeavor to acquire the waters. That said rain waters, ever since the year 1899, have been held up and diverted and used for beneficial purposes by said company and defendants and their predecessors in title for more than 10 years prior to the institution of this suit, and have been used by them adversely and continuously for said length of time to any right of the plaintiff or his predecessors in title. Title to said rain waters was then claimed by the defendants under the three and five year statute of limitation.

It was then further alleged: That in 1889 said company constructed the aforesaid U dam which held up, and has continually held up and diverted, the rain waters, since the same have been carried from the dam and flowing upon the sections of land above described belonging to the defendants, for the purpose of irrigating same, and they have used such waters for the irrigation of their lands by carrying same from the dam across sections 24 and 321. That in 1907, the defendants acquired from the company the right and privilege of using a portion of the waters diverted at the U dam and have been continuously using same since that date, and they have an interest in said dam thereby and a right to use the waters obstructed and diverted thereat. That after the passage of the act of 1913 (Acts 33rd Leg. c. 171), regulating the appropriation of waters, Otto Hoefs and said company, the owners of said diversion dam, in compliance with said act, filed in the county clerk's office a statement and map of the diversion and appropriation theretofore made, and a certified copy thereof, together with the sworn statement, as required by law, in the office of the board of water engineers at Austin, Tex. That prior to 1914, the waters so diverted and used by defendants were carried from the dam and flowed overland, across section 321 and down and upon sections 330, 57, 329, and 328, and furnished water for the irrigation thereof. That in 1914, Neil Wilson, who owns section 321, constructed a levee along the northwest line of his section to prevent the diverted water from flowing down to defendant's lands, and thereupon, defendants, with the consent and permission of the Wilson-Popham Cattle Company, or Al Popham, obtained the right to carry said waters from said U dam across section 24 and section 322 to a point upon section 323 where defendants had constructed the dam complained of by plaintiff. That upon section 323, by means of said dam, defendants diverted the waters

heretofore diverted at the U dam and carried same across the land of the company, with the consent of the company, and irrigated their land in sections 330 and 57 and upon 323. That they have valuable crops in cultivation upon sections 57, 323, and 330, and cannot cultivate same without the use of said waters for the irrigation thereof. That there is no flowing stream with well-defined banks and bed known as the Barella draw or creek, nor has said stream any source other than occasional rainfalls. That it is dry and without any water in same for the greater portion of the time, and never has any water except the rainfall which collects therein from 10 to 20 times a year in rainy years. That it is dry between rainfalls, and in dry years never flows at all, and none of said rainfalls collects or is collected in the draw below the U dam, but collects in the draw above the dam, and remains therein above the dam from one to five days, after which rainfall the draw is dry until the next rainfall, and said draw has no other source of water than the said occasional rainfall, and has no stream to which riparian rights attach, nor in which the plaintiff has any riparian or other rights. That plaintiff did not procure any appropriation of waters in pursuance of law, and that there were no unappropriated waters which he could acquire in the manner alleged, and the state of Texas and board of water engineers had no legal authority to grant to the plaintiff waters belonging to or flowing across defendant's lands. That none of such waters were reserved in the state at the time of the sale of defendant's lands, and all of said waters and the right to use same passed from the state with the sale of the land. That the hearing and action of the board of water engineers declared upon by the plaintiff could not in any wise affect defendant's rights. That if the permit declared upon by plaintiff was granted, that it was expressly subordinate to the rights of the defendants as appropriators of water prior to July 1, 1913, and his said rights, if he has any, by reason of the permit, are inferior to and subordinate to the rights of the defendant in the manner in which they have been using same, as above set forth. That plaintiff has not acquired any rights of way across and over the land of the Wilson-Popham Cattle Company or the lands of these defendants to carry any water from the "U" dam aforesaid to his lands. That the dam of defendants complained of by the plaintiff is completed and in use by them, and the ditches leading therefrom practically completed, and defendants were preparing to use the same for the diversion of such rain waters heretofore diverted at the U dam, and that, with the permission of the Wilson-Popham Cattle Company, they will carry said waters from the U dam to the dam constructed by the defendants.

Upon a hearing, a temporary writ of injunction was ordered issued, enjoining the defendants and each of them from withholding any of the waters of Barrella draw by means of any dam or obstruction in Barella creek until the plaintiff shall have received of the waters of said creek the amount equal to his appropriation and permit, and enjoining the defendants from maintaining said dam in such manner as would obstruct the free flow of the waters of Barella creek, and commanding the defendants and each of them, if such dam is now so constructed as to obstruct the free flow of said waters, to make such opening in and through same as will permit the free flow of water down the creek. From this order, the defendants have appealed.

On June 10, 1914, the board of water engineers of the state granted Short a permit to appropriate and use an amount of the public waters of the state from the flood waters of Barella creek, not to exceed 1,920 acre feet per annum, for the purpose of irrigating said section 58, the water so appropriated to be diverted by means of a diversion dam on said section at such times as flood or storm waters flowed down said creek. The permit recites that the privileges granted thereby were subsidiary to the rights of any appropriators of water from the same source who began or completed any storage or irrigation plant and diverted any water prior to July 1, 1914.

Plaintiff testified:

"I own section 58, which is located west of north from the U dam. The U dam is up the creek 2½ miles from his land. I have owned my land since November, 1911. The U dam diverts the water on both sides. The new Hoefs dam was commenced April 11, 1915. In addition to the dam there is a canal which commences at the new dam and runs in a westerly direction to a draw which runs from Neil Wilson's pasture, through the creek and across the draw and then in a northwesterly direction to Hoefs' land. That dam is about 1½ miles from the U dam. The U dam is above the Hoefs dam. The Hoefs dam is between the U dam and my land. Up to the time of the construction of the Hoefs dam, the effect the U dam had upon the water coming down to my land was that it diverted the water from the west side of the creek into Neil Wilson's pasture and then came down the draw to a road, a low place, onto my land. The U dam diverted all the water from the channel there. There was some water found its way back into the channel around the ends of the U dam, enough to do me and Mr. Hoefs both. The water that found its way into the channel at both ends of the U dam would come right through my land. It was not utilized on that land, but I acquired it. It had no way of diversion. The water that I utilized came right close to where my dam is down the little draw, and Mr. Hoefs' boys and my boys threw up a little levee and ran it back into my pasture and on towards Mr. Hoefs'. My dam is constructed near the south line of my land to divert the waters from the rear creek, which flowed past the 'U' dam. I constructed the dam after receiving the permit. The purpose was to divert water to raise grass, crops, orchards, etc., on my land. My land would not now receive any of the waters that may come down the rear draw on account of the Hoefs dam and canal. If that dam were not there, I would receive plenty of water by means of my dam. I would receive it on my land from the Barella. That is

true of the U dam. Leaving the U dam where it is and taking out the Hoefs dam, my dam would divert all the water I want."

It is contended by appellants that the court erred in granting the injunction, giving plaintiff a prior right to the rain waters flowing across their lands, because the evidence discloses that the same were mere surface waters, not subject to appropriation, and to which defendants had an absolute right, and if subject to appropriation, plaintiff's rights were shown to be subordinate to defendant's right to use such waters.

[1] For the purpose of this appeal it is admitted by appellee that Barella creek is not a stream to which riparian rights can attach, and it is argued by appellants that the waters flowing down same are mere surface waters, not subject to appropriation, and therefore they had an absolute right to capture and impound same at such points upon their lands, and in such manner as they saw fit, and make such use thereof as they pleased. In support of this position, we are referred to Kinney on Irrigation & Water Rights (2d Ed.) §§ 301, 302, 306, 312, 318, 654, which support his contention. But the doctrine there stated and declared by the courts of various states in the Western arid region cannot override our statutory provisions upon the subject as embodied in the Act of April 9, 1913. Vernon's Sayles' Civil Statutes (1914) tit. 73, c. 1. It is thereby provided, in its first section, that the unappropriated waters of the storm, flood or rain waters of every river or natural stream, canyon, ravine, depression or watershed, within the state, the title to which had not already passed from the state, was declared to be the property of the state, and the right to the use thereof for irrigation purposes might be acquired by appropriation as therein provided. There is no contention that any of the waters of the Barella have their source or origin on the lands of appellants, but, on the contrary, it is admitted the Barella has its source in a watershed of large area, lying to the south of the U dam in the foothills and mountains. They are the rain waters of a watershed flowing through the Barella draw; and, in view of the statute, the inevitable conclusion follows that neither appellants nor appellee have any riparian rights in the waters of the draw, and that any right to such water which either may have must have been otherwise acquired. This disposes of the first contention that the waters were not subject to appropriation and became the property of the first captor and impounder thereof.

Passing to the next contention, it is admitted by appellee that appellants have a prior appropriation and that his right is subsidiary to that of appellants.

[2] It thus becomes essential to some extent to determine the appropriation right of appellants.

Section 12 of the Act of April 9, 1913, provides:

"Every person, association of persons, corporation or irrigation district who shall have heretofore constructed or partially constructed any dam, reservoir, lake, canal, ditch or other work for any of the purposes named in this act, who have not heretofore done so, shall, within one year after this act goes into effect, and not thereafter, file for record in the office of the county clerk of the county where the dam, lake, reservoir, pumping plant, intake, or headgate, ditch or canal may be situated, or to which said county may be attached for judicial purposes, and which shall be recorded by said clerk as hereinafter provided, a sworn statement in writing showing approximately the number of acres of land that will be irrigated, the name of such ditch or canal, the point at which the headgate thereof is situated, the size of the ditch or canal and width and depth, and the carrying capacity thereof in cubic feet per second of time, the name of said stream from which said water is taken, the time when the work was commenced, the name of the owner or owners thereof, together with a map showing the route of such ditch or canal; and when the water is to be taken from a reservoir, dam or lake, the statement above provided for shall show in addition to the ditch and other things provided for, the locality of the proposed dam, reservoir or lake, giving the names or numbers of the surveys upon which it is to be located, its holding capacity in cubic feet of water, the acreage and surface feet of land that will be covered, and the limits of such lake, reservoir or dam, and the area of the watershed from which the storm or rain water will be collected."

The sworn statement and map provided for in this section was filed by appellants Otto Hoefs and the Wilson-Popham Cattle Company. In the statement, it is set forth that Otto Hoefs and Wilson-Popham Cattle Company, having theretofore constructed or partially constructed the thereinafter described dam, canals, ditches, and other works for the purpose of irrigation, do hereby make and declare this appropriation of waters as of the date of the beginning of the work; that the water was to be taken from Barella draw; that the work began in 1900, and "the point at which the headgate of said canal is situated is about fifty feet south of the south line of section No. 24, block C-16, public school lands, Reeves county, Texas, at the point where Barella draw crosses said land. Also another headgate located on said Barella draw about 30 feet north of the northwest corner of section No. 322, block No. 13, H. & G. N. R. R. Co. survey, in Reeves county, Texas. The size of the ditch or canal at the headgate is 20 feet wide, 3½ feet deep, decreasing gradually in size to the north terminus thereof, which is 3 feet wide and 1 foot deep, the carrying capacity thereof to be approximately 100 cubic feet per second of time."

It was therein also stated that the water is to be taken from a dam located at the respective headgates above mentioned, as same flows down said draw, but said dam will not cause any lake or reservoir to result therefrom, but will divert the flood, storm and rain waters of said Barella draw. The two headgates therein mentioned are shown upon the map accompanying the statement. The dam first described is the one referred to

in the pleadings as the U dam, and the one second described is the one of which appellee complains and against which the injunction is directed. The date this statement and map was filed with the county clerk is not definitely shown, but it was some time between January 23 and June 27, 1914. A certified copy of this statement with a true copy of the map accompanying same was filed in the office of the board on June 29, 1914, accompanied by a sworn statement as required by section 14 of the act. In the accompanying sworn statement, it was stated:

"That since making the accompanying filing with the county clerk of Reeves county, Texas, the following work has been done under and in pursuance of said filing: Work was first commenced in 1900, or prior thereto, when a dam worth about $1,500 was placed in said Barella draw; from 1910 to January, 1914, about $400 was expended on dams; from January 24, 1914, to this time about $1,000 has been expended for work on dams and material used therein. The dams herein mentioned cause the waters to spread over the lands to be irrigated. Later we propose to construct headgates and ditches in order to convey the flood and storm waters to the various portions of our lands.

"The following work of construction has been completed, a part of which is in actual use: Old dam was located about fifty feet from the south line of section 24, block C-16, public school land in Reeves county, Texas, and was completed, but afterwards washed out. The new dam begins at the S. W. end of old dam and extends a little east of south 220 yards; thence S. E. 140 yards; thence E. 60 yards; thence N. E. 280 yards. A spur dam begins 85 yards S. W. of center of main channel and extends 130 yards southeast. These dams are all completed and in actual use. From the south end of the spur dam a plank dam begins and runs southeast 150 yards, 110 being finished. We will construct in this dam two headgates, one about 5 feet S. of spur dam and will carry 100 feet of water per second, the other in main channel to carry 100 feet per second to a lower dam to be situated near the N. W. corner of section 322, block 13, H. & G. N. R. R. survey. These last-mentioned headgates and dams are not yet completed. None of the ditches shown on map are yet completed.

"The following portions of above work is in possession, but not in actual use. All completed work is in actual use.

"The volume of water being diverted is 100 cubic feet per second for —— days and is being used in irrigation."

Otto Hoefs testified:

"I propose to put a flume through the Wilson-Popham Cattle Company's dam. I propose to get the water from the Wilson-Popham Cattle Company's dam (U), which is above my dam, to my dam, by putting a flume through it with their permission. I have their permission to do that. All the water I divert at my dam will be the water I release through this flume from the U dam. That water, instead of going across the Neil Wilson section and across the Short section, as it formerly did, by reason of these levees, I will now take it through a flume and down the Barella draw and to my dam, and take it out there through ditches to my field."

In our opinion, the two dams are simply parts of a complete whole, an irrigation system, the first work of which was done when the "U" dam was first built about 1900, and which has been used ever since. It was a partially constructed work, and by virtue thereof the appellants were entitled to make

a prior appropriation of water under the provisions of the act mentioned. The act has been complied with by them in the manner indicated, and their prior appropriation thereby perfected. The U dam is the primary and basic dam of the system, and the dam near the northwest corner of section 322 is subsidiary and secondary thereto. We can see no reason whatever why appellants should not be permitted to carry the water, to which they are entitled under their appropriation, in the natural channel of the draw from the U dam to the second diversion dam. The fact that they use the natural channel of the draw instead of an artificial ditch to convey the water to which they are entitled is a matter of no consequence. So long as they do not undertake to use more than this appropriation entitles them to use they are within their rights and should not be interfered with. The waters which they are undertaking to divert at the second dam are waters which they release at the U dam through a flume, and not waters which find their way back into the channel of the draw through seepage or natural drainage.

Under the record here presented, it is unnecessary for us to determine whether appellants are entitled to divert and use 100 cubic feet per second at the U dam and an additional like amount at the other. In any event they are entitled to a total of 100 cubic feet per second. Under the court's order they are restrained from diverting any part of this amount at the second dam, irrespective of the amount diverted and used at the U dam. It does not appear how much is being diverted and used at the U dam. Unless it shall appear that the amount diverted at the U dam, together with that there released through the proposed flume and thence transported down the draw to the second dam and there diverted, shall exceed the amount of water to which appellants are entitled under their appropriation, appellee is not entitled to any relief.

If appellants were undertaking at the second dam to divert water which finds its way back into the draw by seepage at the U dam, and by natural drainage, or if the aggregate amount attempted to be diverted exceeded 100 cubic feet per second, then it would be necessary to determine whether appellants' prior appropriation is 100 or 200 cubic feet per second, but in the state of the pleadings and evidence, it is unnecessary to determine this question.

This discussion has departed from the issues raised by the pleadings, due to the fact that appellee, in some respects assumes here an attitude in opposition to the allegations of his petition. In fact, we might dispose of this appeal upon the theory that the evidence fails to substantiate material allegations upon which plaintiff predicates his right to an injunction, it clearly appearing that the Barella is not a flowing stream to which, as such, riparian rights attached in plaintiff's

favor, which was alleged as a basis for the injunction. We have preferred, however, to discuss the case from the standpoint assumed by appellees in this court.

The temporary injunction issued herein by the court below is dissolved, and the cause is reversed and remanded.