FEDERAL LAND BANK OF HOUSTON ET AL. V. J. R. LITTLE ET AL.

No. 6905.  Decided June 30, 1937.
Rehearing overruled July 28, 1937.
(107 S. W., 2d Series, 374.)

*Lewis Rogers, Bruce Billingsley, Cedric Taylor, Carl Runge,* and *H. A. Berry,* all of Houston, and *Rowell & Rowell,* of Jefferson, for plaintiffs in error.

The wording of the will of testator comes within the Rule in Shelley's Case, therefore testator's son took an absolute fee simple title to the property involved in this case. Lacy v. Floyd, 99 Texas 112, 87 S. W. 665; Hawkins v. Lee, 22 Texas 547; Taylor v. Cleary, 29 Grat. (Va.) 448.

The term "heirs" is a legal term meaning those upon whom the law casts property and must be interpreted according to its strict legal import unless it clearly appears from the context of the instrument wherein it is used that such term is used in a different sense, and L. T. Little, the son, having left an heir at his death, the limitation or condition of the will that in the event of his death without an heir the estate of his father should be divided between the heirs of the father's brothers and sister never became effective, but the fee simple title given to the son became absolute. Brookshire v. Wambaugh, 9 S. W. (2d) 269; Kestroun v. Plsek, 12 S. W. (2d) 220; 40 Cyc. 1396, 1459, 1461.

*T. W. Davidson, J. W. Randall,* and *James Gray,* all of Dallas, for defendants in error.

It being essential to the application of the Rule in Shelley's Case that the remainder be to the heirs of the first taker, the rule can have no application when the remainder is to the heirs of the uncles and aunt of the first taker. Cahce v. Gregg, 88 Texas 552, 32 S. W. 520; West v. Glisson, 184 S. W. 1042; 24 R. C. L. 893; 29 L. R. A. (N. S.) 1000, 1008.

The words "heir" or "heirs" as used in the will mean "child" or "children" respectively. Wallace v. Bank of Paris, 120 Texas

92, 35 S. W. (2d) 1036; Simonton v. White, 93 Texas 50, 53 S. W. 339.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The controversy herein as to the title to an undivided one-half interest in four tracts of land in Harrison and Marion Counties is determined by the construction of the will of J. D. Little. Judgment of the trial court in favor of defendants in error was affirmed by the Court of Civil Appeals. 79 S. W. (2d) 645.

Except for direction as to payment of debts and funeral expenses, for the erection of a monument and the appointment of the son as executor, the will is as follows:

"I give devise and bequeath all the rest residue and remainder of my estate both real and personal to my son L. T. Little to have and to hold to him and his heirs forever in the event L. T. Little should die without an heir my estate to be divided equally between the heirs of H. H. Little Mary Davidson and R. C. Little."

The will was executed July 12, 1902, and filed for probate April 4, 1904. J. D. Little was a farmer, having only a common school education and no special knowledge of law or legal matters. He and his wife, who was dead when the will was executed, had but one child, L. T. Little. H. H. Little, R. C. Little and Mary Davidson, named in the will, were the brothers and sister of the testator. The two brothers had been dead many years when the will was executed. The sister died in the year 1906. L. T. Little's first wife died without issue and he married again in 1914 and died in 1926, leaving no issue and willing his property to his surviving wife, Minnie Mae Little. Plaintiffs in error claim title through deeds and other instruments executed by Minnie Mae Little. Defendants in error are the children and grandchildren of H. H. Little, R. C. Little and Mary Davidson.

The principal contentions made by plaintiffs in error are first, that under the rule in Shelley's case the will gave to L. T. Little the fee simple title to the land, and second, that if the will is subject to construction or if the condition stated in the will is to be given any effect, then the condition was met in that L. T. Little left surviving him an heir, his widow, Minnie Mae Little.

■ The case is not one for the application of the rule in Shelley's case. The words first used in the will by which the testator gives

all of his property to his son L. T. Little "to have and to hold to him and his heirs forever" are the words ordinarily used to devise or grant the full fee simple estate. While the use of the quoted words is by our statute (Article 1291, Revised Civil Statutes, 1925) made unnecessary for the vesting of the estate in fee simple, they have a well defined meaning and would clearly evidence the intention of the testator to devise to L. T. Little an absolute estate in fee simple but for the added words "in the event L. T. Little should die without an heir," etc. Texas Co. v. Meador, (Com. App.) 250 S. W. 148; Darragh v. Barmore, (Com. App.) 242 S. W. 714; West v. Glisson, 184 S. W. 1042 (application for writ of error refused); St. Paul's Sanitarium v. Freeman, 102 Texas 376, 117 S. W. 425, 132 Am. St. Rep. 886. The rule in Shelley's case has no application to the will under construction for the further reason that there is lacking one of the requisites for its application, namely, the limitation of an estate by way of remainder *to the heirs, or the heirs of the body,* of the first taker. L. T. Little is the first taker. There is no limitation over to his heirs. 24 R. C. L., pp. 893-894, Sec. 5; Note, 29 L. R. A. (N. S.) pp. 963, 1016-1017. See also: Lord Coke's and Chancellor Kent's statements of the rule in Shelley's case as quoted in Wallace v. First National Bank, 120 Texas 92, 97, 35 S. W. (2d) 1036; Hancock v. Butler, 21 Texas 804, 808; Crist v. Morgan, (Com. App.) 245 S. W. 659, 660; Seay v. Cockrell, 102 Texas 280, 286, 115 S. W. 1160; 3 Bouvier's Law Dictionary, (3d revision) p. 3057.

■ The provision in the will that in the event L. T. Little should die without an heir the estate is to be divided among the heirs of the testator's brothers and sister can not be ignored. It qualifies the words preceding it and converts what without the provision would have been an unconditional fee simple estate into an estate in fee, defeasible, however, upon the happening of the stipulated contingency, the death of L. T. Little without an heir.

In St. Paul's Sanitarium v. Freeman, 102 Texas 376, 117 S. W. 425, 132 Am. St. Rep. 886, the testator in one paragraph of his will devised all of his property to Robert M. Freeman, but he stipulated in another paragraph that in the event Robert M. Freeman should die without issue all of the property should be given to the Saint Vincent de Paul Institution. Freeman contended that the will gave him the fee simple title. It was held, however, that the estate devised to Freeman was subject to be defeated by his death without issue and that if Freeman should die at any time without issue the limitation over to the institution should take effect.

The will construed in Darragh v. Barmore, (Com. App.)

242 S. W. 714, in its first paragraph gives all of the testator's property to his two children, John and Mabel. Another paragraph provides that if John dies before his sister without heirs of his body, all of his portion of the estate shall go to Mabel. It was held that John took by the will an estate in fee defeasible upon his death before his sister, without leaving bodily heirs, in which event the executory devise over to his sister would take effect.

In West v. Glisson, 184 S. W. 1042 (application for writ of error refused), the will was almost identical in language with the will here under construction. It gave all the testator's property to her daughter and her heirs in fee simple, but added in another paragraph the expression of the testator's will that if the daughter should die without heirs of her own, the property or the residue of the same should vest in fee simple in her granddaughter. The court overruled the daughter's contention that the first paragraph should be construed independently of the second to give to her the full fee simple title, and construed the will as giving the daughter an estate in fee determinable upon the condition expressed.

Since the condition in the will which qualifies the estate devised to L. T. Little must be given effect, it becomes necessary to determine the meaning of the condition. The language used is "in the event L. T. Little should die without an heir." The case turns upon the meaning of the word heir. Plaintiffs in error would give to the word its broad or technical meaning, making it include any person who would inherit from L. T. Little under the statute of descent and distribution. If the word is so construed, the surviving wife is an heir of L. T. Little and the estate devised to him was, when he died leaving a wife, freed from the qualification that limited it. Defendants in error contend that the word heir means child or issue and consequently that when L. T. Little died without a child the estate vested in them as the heirs of the testator's brothers and sister.

■ While the instant case is not one for the application of the rule in Shelley's case, the cases in which that rule is invoked are useful and appropriate in determining the meaning of the word heir. In them the first inquiry, without reference to the rule, is as to the sense in which the testator used the word heir. If it is found that he used the word in the nontechnical or restricted sense of child, then the rule in Shelley's case is never reached. Crist v. Morgan, (Com. App.) 245 S. W. 659, 662.

The word heir or heirs has often been construed to mean child or children. Simonton v. White, 93 Texas 50, 53 S. W. 339, 77 Am. St. Rep. 824; Hopkins v. Hopkins, 103 Texas 15, 122

S. W. 15; Hunting v. Jones, (Com. App.) 215 S. W. 959; Shugart v. Shugart, (Com. App.) 248 S. W. 328; Wallace v. First National Bank, 120 Texas 92, 35 S. W. (2d) 1036; Calvery v. Calvery, 122 Texas 204, 55 S. W. (2d) 527; West v. Glisson, 184 S. W. 1042 (application for writ of error refused). Indeed, the tendency of the decisions in this State has been to construe the word heirs to mean children in order to avoid the enforcement of a rule which has been recognized but not regarded with favor. Justice ROBERTS, in discussing the rule in Shelley's case in Hancock v. Butler, 21 Texas 804, 812, said: "The current of decisions in the American states where it has not been abolished bears strongly against enforcing it, unless in cases coming strictly under the rule. They more readily seize hold of any qualifying or superadded words, varying the sense of the technical terms in order to make them words of designation, than is done in England."

And in Calvery v. Calvery, 122 Texas 204, 212, 55 S. W. (2d) 527, Justice SHARP, then Commissioner, writing an opinion adopted by the Court, said: "It is only when the facts bring a case under the strict letter of the rule that the courts of this State will apply and enforce it."

The prevailing inclination has been away from the application of a technical rule and to the ascertainment of the true intention of the testator. Accordingly when we are asked to give the word heir a technical meaning, the natural, and we think proper, inquiry is, did the testator intend to use the word in its technical sense?

To paraphrase the often quoted language of Chief Justice WHEELER in Hunt v. White, 24 Texas 643, 652, the intention of the testator must be ascertained from the meaning of the words in the will and from those words alone, but in order to discover the meaning attached by the testator to the words used and to apply them to the particular facts in the case, the law admits extrinsic evidence as to the situation in which the testator was placed, the state of his family, his property and other circumstances relating to himself individually and to his affairs. See also: Peet v. Commerce & E Street Railway Co., 70 Texas 522, 527, 8 S. W. 203; Cleveland v. Cleveland, 89 Texas 445, 450, 35 S. W. 145; Jackson v. Templin, (Com. App.) 66 S. W. (2d) 666, 668, 92 A. L. R. 873; Hunting v. Jones, (Com. App.) 215 S. W. 959; Wallace v. First National Bank, 120 Texas 92, 101, 35 S. W. (2d) 1036.

■ Looking first to the language of the will, without reference to extraneous circumstances, it is to be observed that the condition upon which the limitation over is made (if L. T. Little

should die without an heir) is a most unusual one, one that a testator could not reasonably contemplate, if the word heir is to be given a technical meaning so as to include any person who might inherit under the statute of descent and distribution. That statute makes careful provision for the passing of property to very remote kin. The word heir has a popular meaning and the phrase "to die without an heir," popularly, or among those having no technical knowledge, means to die without a child. The reasonable inference is that J. D. Little, the testator, in making disposition of his estate, had in mind the probability that his son would die without a child rather than the remote possibility of his dying without any person who could inherit from him under the statute.

But a fact apparent on the face of the will (in connection with the evidence identifying H. H. Little, R. C. Little and Mary Davidson as the brothers and sister of the testator, the uncles and aunt of L. T. Little) leads irresistibly to the conclusion that the testator did not by the use of the word heir intend to include all who might inherit from L. T. Little in accordance with the statutes of descent and distribution. It is that if the word heir is so construed, the limitation over could never take effect. The property could never go to the heirs of the brothers and sister of the testator because if such heirs or any of them were living at the time of the death of L. T. Little they would be his heirs under the statute and he would not have died without an heir.

Looking to the circumstances under which the will was executed to discover the meaning attached by the testator to the word heir used in the will, we find: The will apparently was not made by one learned in law. J. D. Little had only a common school education and doubtless did not understand the full import of the word heir in a technical sense. His wife was dead and his only son was a widower with no children. He had a living sister and his two brothers had died leaving children. Under such circumstances he must have believed it probable that his son would die without issue and no doubt he desired to keep the property in his own family. Thus he undertook to make provision that in the event of his son's death without a child the property would go to his nearest kin, the heirs of his brothers and sister.

■ Plaintiffs in error suggest that the will should be construed to mean that the property would pass to the persons named, in the event of the death of L. T. Little without other heirs than those named, but we find no language in the will to support such construction. The condition is if he should die without an heir, meaning any heir. And if the word is to be given its

technical or broad meaning, it includes, in the absence of qualifying words or language showing a contrary intention, any person on whom the law casts title to property owned by an intestate. Peet v. Commerce & E Street Railway Co., 70 Texas 522, 8 S. W. 203. We think the word was not used in its technical sense, but whether it means heir in the technical sense or child, it means any heir or any child.

■ The Court of Civil Appeals, on the authority of St. Paul Sanitarium v. Freeman, 102 Texas 376, 117 S. W. 425, 132 Am. St. Rep. 886, correctly held that the phrase "in the event L. T. Little should die without an heir," means the death of L. T. Little at any time and not his death before that of the testator. See also: Darragh v. Barmore, (Com. App.) 242 S. W. 714.

■ We have examined the facts set out in the agreed statement of facts as to possession of the land in controversy by those under whom plaintiffs in error claim and it is our opinion that such agreed facts do not establish the peaceable and adverse possession required by the statutes to preclude the rights of the owners. Revised Civil Statutes of 1925, Articles 5510, 5514, 5515.

The judgments of the trial court and the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court June 30, 1937.

Rehearing overruled July 28, 1937.