**SIMMONS v. O'CONNOR et al.**

No. 14193.

Court of Civil Appeals of Texas.
Fort Worth.

March 21, 1941.

Rehearing Denied. April 18, 1941.

A. J. Clendenen, of Fort Worth, for appellant.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellee Mrs. Alma Adamson and others.

Smith, Young & Smith, of Fort Worth, for appellee Mrs. Idee T. Allen.

Frank J. Ortman, of Detroit, Mich., and Allen & Gambill, of Fort Worth, for appellee Mrs. Antoinette O'Connor and another.

Ashley Cockrill, of Little Rock, Ark., for appellee Mrs. Emma T. Rogers.

McDONALD, Chief Justice.

This suit was brought by W. T. Simmons to recover an undivided interest in certain real estate situated in the State of Texas. Judgment was rendered for the defendants, and plaintiff has appealed.

Major J. T. W. Tillar, for many years prior to and at the time of his death a resident of Pulaski County, Arkansas, died in that county in 1908. He left a written will, which was executed in that county in 1901, and which was prepared by his friend and legal advisor, W. S. McCain, a practicing attorney of Little Rock, Arkansas. The will was duly admitted to probate in Arkansas, and a properly authenticated copy of it was recorded in the Deed Records of Tarrant County, Texas, as a muniment of title. Both at the time the will was made, and at the time of his death, Major Tillar owned real and personal property worth several hundred thousand dollars located in Arkansas, as well as real estate valued at $250,000, and a large amount of personal property, located in Texas. But the Texas land owned by Major Tillar at the time of his death is not the land involved in this suit. The will is copied herein in full:

"I, J. T. W. Tillar, declare this to be my last will and testament:

"My wife and children are to take the personal property just as if I had died without a will except as herein provided. I desire that my daughters Flora V. Holmes and Mai Tillar shall receive only the income of the part of my personal property and choses in action which would otherwise be inherited by them. I desire that all my real estate wherever situated, shall be kept together and the income and rents thereof applied and appropriated to the support of my children and their families, each of the children receiving an equal share of the rents and income of the real estate and to this end I constitute and appoint my wife, Antoinette and my son, Ben J. Tillar, trustees and executors of this my will and I devise and bequeath to them all of my real estate wheresoever situated, to have and to hold in trust, to apply the rents and profits equally among my children Ben J. Tillar, Thomas Franklin Tillar, Garland Tillar, Flora V. Holmes, Mai Carroll and Idee Allen after first applying and using whatever amount of such rents may be needed to support and maintain my wife if her dower in my personalty should prove insufficient at any time. If any of my children die leaving no children or their descendants, then the trustees are to hold their shares of the land in trust for the other children, but if any child die leaving bodily heirs such bodily heirs shall take such deceased child's part of the real estate in fee simple.

"As to the personal property which would otherwise be inherited by my daughters Mary and Flora V. I devise that including choses in action, as part of such personalty to my wife and to my son Ben J. Tillar in trust to keep the same invested in, or loaned out on lands or good stocks, applying or appropriating the income thereof to the support of said Flora V. and Mai during their lives, respectively, and at their death to be paid over to their children, if they leave any and if none then to be paid over to their heirs,

"I except from the real estate above devised all the real estate which I own situated in Pine Bluff, Ark.—which I hereby devise and bequeath to my grand-daughter Alma Holmes and the heirs of her body, and if I sell any of the real estate in Pine Bluff then Alma is to receive as much as the proceeds thereof out of my personal estate.

"I have advanced to my daughter Flora V. Holmes $16,500.00 and to the other five children $5,000.00 each, all of which is charged in a book kept for that purpose, and I may advance to and charge them with more and these advancements are to be accounted for and charged to them in dividing my personal estate.

"I request my friend W. S. McCain to settle any and all disputes among my children, as to their rights under this will, as I do not want them to litigate with each other in the courts over my property, and if they refuse to abide by his decision any

of them so refusing shall forfeit one-half of his or her share of my real estate.

"The trustees may sell any of my real estate and reinvest the proceeds of the sale in other real estate, taking the real estate so purchased on the same trust as that which may be sold. My executors are not to be required to give any bond for the performance of their duties as Executors but they are to settle my estate as expeditiously as practicable.

"Witness my hand and seal this July 16th, 1901.

"(Seal)                    J. T. W. Tillar."

"We are witnesses that on this July 16th, 1901, J. T. W. Tillar in our presence signed the foregoing instrument of writing and at the time of doing so he declared it to be his last Will and Testament, and in his presence and at his request and in the presence of each other we sign and attest the same as witnesses.

"George B. Pugh
"W. S. McCain."

Mai Tillar, also referred to in the will as Mary, and as Mai Carroll, resided in Pulaski County, Arkansas, at the time of her father's death. After her father's death, she married the plaintiff, W. T. Simmons, and moved to Fort Worth, Texas, where she resided to the time of her death in 1938. She died childless, and her mother had predeceased her. In addition to her husband, she was survived by one sister and four nieces. Other than the above named, she was not survived by any brothers or sisters, or any children or descendants thereof. At the time the will was made, and at the time Major Tillar died, the daughter, Flora V. Holmes, also resided in Pulaski County, Arkansas.

Antoinette Tillar and Ben J. Tillar, the trustees, accepted the trust contained in the will as to the personal properties left in trust for the benefit of Mai Carroll and Flora V. Holmes, and a portion of the personal property left in trust was invested by the trustees in the real estate involved in this suit.

The will provided that the wife and children of the testator "are to take the personal property just as if I had died without a will except as herein provided. I desire that my daughters Flora V. Holmes and Mai Tillar shall receive only the income of the part of my personal property and choses in action which would otherwise be inherited by them." It further provided that the income from it should be appro-

priated to the support of these two daughters during their lives, "and at their death to be paid over to their children, if they leave any and if none then to be paid over to their heirs."

The controversy in this suit hinges upon the interpretation of the word "heirs" in the provision of the will last quoted.

Plaintiff attempts to base his theories upon the rule of law stated in Holman v. Hopkins, 27 Tex. 38, and followed in later cases, including Crossland v. Dunham, 135 Tex. 301, 140 S.W.2d 1095, 1097.

"It is now the well settled doctrine that the law of the actual domicil of a testator is to govern in relation to his testament of personal property, whether the property is situated within the domicil of the testator or in a foreign country. (Story's Conflict of Laws, sec. 467; 1 Jarman on Wills, 3.) But in respect to the real property of the testator, the place where the property is situated is to govern not only as to the capacity of the testator, and the extent of his power to dispose of the property, but as to the forms and solemnities to give the will its due attestation and effect."

Plaintiff contends that the word "heirs", insofar as the Texas land acquired by the personal property trust is concerned, must be held to mean those persons who would inherit from Mai Simmons under the Texas statutes of descent and distribution, Vernon's Ann.Civ.St. art. 2570 et seq. Plaintiff concedes that the word "heirs" is to be interpreted by the Arkansas law as far as the personal property still owned by the trust is concerned, and makes no claim to it. Under the Arkansas law, plaintiff would not be an heir of his deceased wife.

We believe that plaintiff has misconstrued the rule set out in Holman v. Hopkins, supra, Crossland v. Dunham, supra, and the other cases of like purport cited in his brief. In 79 A.L.R., beginning at page 91, will be found a most complete collection of cases, and a lengthy editorial discussion, pertaining to the discussion of conflict of laws as to the construction and effect of wills devising real property. From these authorities we believe it might be forcibly argued that the law of Arkansas should govern in the interpretation of the word "heirs" in the present case, as determining the distribution of either real or personal property. But in our opinion, the decision of the case does not necessarily rest upon that question. We believe that the law of Texas supports the judgment of

the trial court denying plaintiff a recovery of any interest in the real estate involved.

■■ It is clear that only the Texas courts have jurisdiction to adjudicate titles to Texas lands, and that in such suits the laws of Texas must apply. Moseby v. Burrow, 52 Tex. 396, Barnett v. Pool, 23 Tex. 517, 518, Youree v. Pires, Tex.Civ. App., 5 S.W.2d 178. But the rule of law in Texas is that the word "heirs", when used in a will, does not necessarily mean those persons who would inherit under the laws of descent and distribution.

"The prevailing inclination has been away from the application of a technical rule and to the ascertainment of the true intention of the testator. Accordingly, when we are asked to give the word 'heir' a technical meaning, the natural, and we think proper, inquiry is, Did the testator intend to use the word in its technical sense?

"To paraphrase the often quoted language of Chief Justice Wheeler in Hunt v. White, 24 Tex. 643, 652, the intention of the testator must be ascertained from the meaning of the words in the will and from those words alone, but in order to discover the meaning attached by the testator to the words used and to apply them to the particular facts in the case, the law admits extrinsic evidence as to the situation in which the testator was placed, the state of his family, his property, and other circumstances relating to himself individually and to his affairs. See, also, Peet v. Commerce & E. Street Railway Co., 70 Tex. 522, 527, 8 S.W. 203; Cleveland v. Cleveland, 89 Tex. 445, 450, 35 S.W. 145; Jackson v. Templin (Tex.Com.App.) 66 S. W.2d 666, 668, 92 A.L.R. 873; Hunting v. Jones (Tex.Com.App.) 215 S.W. 959; Wallace v. First National Bank, 120 Tex. 92, 101, 35 S.W.2d 1036." Federal Land Bank v. Little, 130 Tex. 173, 107 S.W.2d 374, 377.

The will in the above case contained a provision reading as follows: "I give devise and bequeath all the rest residue and remainder of my estate both real and personal to my son L. T. Little to have and to hold to him and his heirs forever in the event L. T. Little should die without an heir my estate to be divided equally between the heirs of H. H. Little Mary Davidson and R. C. Little."

L. T. Little was the only son of the testator, and the other beneficiaries named in the will were the brothers and sister of the testator. L. T. Little died sev-

eral years after the will was probated, leaving a widow. The opinion recites that the determination of the case turns upon the meaning of the word heir. The court then holds that, looking first to the language of the will, and then to the circumstances under which the will was executed, to discover the meaning attached by the testator to the word heir used in the will, the testator did not intend to include the son's widow within the term "heir".

In Hassell v. Frey, 131 Tex. 578, 117 S.W.2d 413, 414, it was held that the testator did not intend to include an adopted daughter within the term "my heirs at law". The following are quotations from the opinion in the case:

"The primary rule governing the construction of wills is to ascertain the intention of the testator. This intention should be, if possible, gathered from the instrument itself. In applying this rule it is well to keep in mind that a more liberal rule prevails in construing wills than in construing deeds. The reason for this distinction rests on the ground that a testator may not have had the same opportunity of legal advice in drawing a will as he would have had in executing a deed. Calvery v. Calvery, 122 Tex. 204, 55 S.W.2d 527; 4 Kent Com., 216; Andrews v. Spurlin, 35 Ind. 262; Williams, Real Property (5th Ed.), 212; Brockschmidt v. Archer, 64 Ohio St. 502, 60 N.E. 623. For an exhaustive annotation of authorities on this point, see 29 L.R.A.,N.S., 1038. * * *

"In order to ascertain the intention of the testator expressed in a will, the language used therein may be construed in connection with the surrounding facts and circumstances existing at the time the will was made. If necessary, parol testimony may be heard to gather the true intention of the testator expressed in such will; and such intention, if legal, must prevail. Wallace et al. v. First National Bank of Paris, 120 Tex. 92, 35 S.W.2d 1036; Federal Land Bank of Houston v. Little [130 Tex. 173] 107 S.W.2d 374."

The court concludes the opinion by saying that, construing the will and codicils as a whole, in connection with the surrounding circumstances, it is clear that the testator did not use the term "heirs at law" in a strict or technical sense, saying:

"The courts of this State are liberal in construing the words 'heir' and 'heirs,' or other similar terms, in order to carry out the intention of the testator."

Peet v. Commerce & E. S. Ry. Co., 70 Tex. 522, 8 S.W. 203, is to the same effect.

So, applying the Texas law, as set out in the above cases and in many other cases therein cited, we shall undertake to ascertain the meaning of the expression heirs as used in Major Tillar's will. We shall first look to the language of the will as a whole, and then, if required to do so, will look to the circumstances surrounding its execution.

The second sentence of the will is:

"My wife and children are to take the personal property just as if I had died without a will except as herein provided."

■ The testator must have meant that they should take according to the Arkansas law. Conclusive of this, we think, is the fact that he referred to the wife's dower in the personal property. Such dower rights existed under the Arkansas law, but not under the Texas. law. The will created two trusts. One was the real estate trust for the benefit of the wife and all of the children. The other was the personal property trust for the benefit of the two married daughters, Mai Carroll and Flora V. Holmes. If it be argued that the testator had in mind the general rule of law, followed by the Texas courts, to the effect that the law of the domicile should apply as to the personalty and the law of the situs of the realty as to the realty, this fact may be observed: He expressly provided that if any child should die leaving no children or their descendants, the trustees should hold such child's share in the land for the benefit of the testator's other children; but as to the personalty left in trust for the benefit of the two married daughters, he provided that, if either should die without children, the part so left in trust should be paid over to the heirs of such married daughter. Having created a real estate trust and also a personal property trust, by the same will, it is easily possible, and altogether probable, that he thought the law of Arkansas would apply as to the personalty, and used the word heirs with the Arkansas law in mind. The will does not contain any provision indicating that the testator intended that the final distribution of the personal property trust, after the death of the married daughters, should be affected by the fact that the trustees might invest in personalty on the one hand, or in realty on the other. There is nothing in the will itself to suggest that the word heirs should have a variable

meaning, dependent upon the type and location of the investments later to be made by the trustees.

The will did not leave the corpus of the personal property to the two married daughters, but provided only that the income from it should be used for their support during their lifetime. The "heirs" of Mai Simmons do not take the corpus of the personal property by inheritance from her. Her only rights with regard to the property were to receive the income, and they terminated upon her death. The interest in the personal property, which, to use the language of the will, "would otherwise be inherited by my daughters Mary and Flora V. Holmes", passes, not by inheritance from Mai Simmons, but by and under the terms of Major Tillar's will. The word heirs was used to designate the class of persons whom the testator intended should receive the property after the purposes of the trust should have been fulfilled.

■ The will suggests that the testator was concerned as to the final disposition of his property. A construction of the will which would give the word heirs a fixed, definite meaning under all circumstances, would be preferable to a construction which would give it a meaning varying from state to state, and even two different meanings in the same state. It does not seem reasonable to hold, in the absence of words indicating such, that the testator intended to surrender to the trustees the determination of the final recipients of the trust estate. And that would be the effect of holding that the will would have one meaning in one state, and another meaning in another state, one meaning as to investments made by the trustees in personal property, another meaning as to investments made by the trustees in real estate. We believe that the common sense interpretation of the will is that the testator intended one certain class of persons, and only one, by the use of the word heirs.

■ These views do no violence to the rule that the validity of the will, or the capacity of the testator, or the extent of his power to dispose of the property, or the sufficiency of its execution, or the effect of the will, shall be determined by the law of the state where the land is situated. The courts of Texas will not give effect to a will disposing of land in Texas if it violates the rules of property

prevailing in this state. The problem in this case is to determine the meaning of the expression heirs. The problem would be the same if the will had been made in Texas. The problem would be to find the meaning of this word, as used by the testator, whether personal property or real property were involved. If the word had a fixed, definite meaning, under all circumstances, if it were a legal term having one meaning and one meaning only under the Texas law, then the case might be different.

The holdings in the two following Texas cases show that the rule is not as broad as contended by plaintiff.

Lanius .v. Fletcher, 100 Tex. 550, 101 S.W. 1076, 1077. Mrs. Gilpin, the testatrix, a resident of Illinois, made a .will in Illinois creating a trust for the benefit of her daughter. Her estate consisted wholly of personal property, most of which was in Texas. Although she died in Illinois, the will was probated in Texas. The daughter, the cestui que trust, brought a suit to terminate the trust. Under the law of Illinois she would have been entitled to terminate the trust, but under the law of Texas she would not have been entitled to terminate it. The question was whether to apply the laws of Texas or the laws of Illinois. The court recognized the well settled rule that the law of the domicile should apply as to the personal property of the testatrix, unless it clearly appeared that she had in mind the laws of Texas at the time she made her will. The court then examined the circumstances of the case, and held that she did have the Texas laws in mind, and applied the Texas law denying the plaintiff the right to terminate the trust. The following is taken from the opinion:

"The object of construing all written instruments is to ascertain the intent of the maker. Granting that we should presume that the intent of· the testatrix was that the law of her domicile should furnish the rule of construction and execution of her will, unless we find that her intention was that the law of Texas should control, we must examine the facts to ascertain if she intended that the law of Texas should control, instead of the law of Illinois. Whatever may have been her intention, when discovered, it must govern the court in determining the issue presented. "

King v. Lowry, Tex.Civ.App., 80 S.W.2d 790, writ of error refused. The plaintiff

brought a suit in Texas, alleging that the testatrix, her aunt, a resident of Missouri, made a parol agreement in Missouri with a Mrs. Wood, a sister of the testatrix, to the effect that testatrix would devise certain real estate situated in Missouri to Mrs. Wood, upon the agreement that Mrs. Wood would support plaintiff, a cripple, with the income from this Missouri real estate; that Mrs. Wood agreed to do this; that the will was accordingly made; that after the death of the testatrix Mrs. Wood took possession of the Missouri real estate, sold it, and later invested the proceeds in real estate situated in Texas. The object of the suit brought by plaintiff was to impress upon this Texas real estate the parol trust alleged to have been impressed upon the Missouri real estate by the facts stated. The court referred to the rule that disposition of real estate, by will or otherwise, is usually governed by the law of the place where the land is situated. Under the law of Missouri, the creation of a trust of this nature was required to be in writing. The court held that since no trust could have been created under the Missouri law upon the Missouri real estate by an oral agreement, the plaintiff had no interest in the Missouri real estate, and consequently no interest in the Texas real estate which had been acquired with the proceeds of the sale of the Missouri real estate. In other words, since the plaintiff acquired no rights in the Missouri real estate under the laws of Missouri, she could not later acquire rights in the Texas real estate simply because a parol trust could be established under the laws of Texas.

It seems to us that the situation of the plaintiff Simmons, in the case on appeal, is similar to that of the plaintiff in the case just cited. He concedes that he would have had no right to the personal property in the form in which it was left by the testator. We are not able to see how he can acquire rights, which he otherwise would not have had, merely because of a change in the form of the investments of the trust fund. We cannot distinguish his situation from that of the plaintiff in the case just cited.

The Supreme Court refused an application for writ of error in the case just cited, and expressly refers to and approves the holding in it in the later case of Crossland v. Dunham, supra.

The testator resided in Arkansas when he executed the will. It was prepared by an

Arkansas lawyer. The testator died in Arkansas. The two married daughters lived in Arkansas. If the testator had in mind the law of Arkansas only, or if he also had in mind the rule that the law of the domicile prevails as to personal property, the reasonable conclusion is that he used the word in the sense in which it was commonly used in Arkansas, that is to say, that the husband was not included within the term. There is nothing in it to indicate that he intended to give to the trustees such power of appointment as would enable them to determine, by selecting the type and place of investment, who should finally receive the estate. And in this connection it may be noted that the trustee actually in charge of the estate at the time of Mai Simmons' death was a corporation. The trustees named in the will had both died, and the District Court of Tarrant County had appointed a trustee to take charge of the property in Texas, while the Chancery Court in Arkansas had followed a similar procedure there. We should not hold that the testator intended that some corporation should eventually determine, by the selection of the investments to be made, the persons who should receive his estate under his will, in the absence of express language in the will to such effect.

■ Plaintiff argues that the power given to the trustees to invest the personal property in real estate is evidence that the testator intended that the word heir should be interpreted by the laws of descent and distribution of any state where the land might be acquired. We do not agree with this view. The testator expressly provided, as to the land owned by him, that if any child should die childless, his part should be held in trust for the testator's other children. The provision of the will was that the trustees of the personal property should invest it in land, land loans, or good stocks. The reasonable interpretation of this is that he desired the trust assets to be invested in a sound, conservative manner. The direction to the trustees evidently was intended to pertain to the security of the trust fund, and not to the question of who should receive it after the death of the married daughters.

■ If we be mistaken in the views we have expressed, we think there is still another reason why plaintiff cannot prevail. The authorities are numerous to the effect that the character of a trust fund, whether personal or real, will remain the same, for the purposes of final distribution, whether invested by the trustees in real or personal property, except where the case is one of equitable conversion. It is not contended that an equitable conversion is presented in the case on appeal. The rule is stated in O'Brien v. Lewis, 208 Mass. 515, 94 N.E. 750, 751:

"Under these circumstances, a conversion not having been ordered by the testator, each kind of property in the trust fund should be treated as retaining its original character until it shall have come into the hands of one who is entitled to treat it as his own absolutely and for all purposes."

In Rhode Island Hospital Trust Co. v. Harris, 20 R.I. 408, 39 A. 750, 751, it is said: "We are of the opinion that as the real estate was sold by the trustee subsequently to the death of the widow, not in pursuance of any direction by the testator, but merely for the purposes of the trust, its proceeds are to be treated as real estate, and are to be distributed among the persons who would have been interested in the real estate had it not been sold."

In Vandewalker v. Rollins, 63 N.H. 460, 3 A. 625, 626, it is said: "The quality of property for purposes of transmission by will or inheritance is not changed from the character in which the testator or intestate has left it, unless there is some clear act or intention by which he has impressed upon it a definite character either as money or land. Story, Eq. 1214. A bequest of money, in trust, to be converted into land, to be held to the use of one for life, with remainder over, is a devise of the land which takes effect on the death of the testator, though the money has not then been converted; and a devise of land, with power of sale, and direction to pay the proceeds to particular persons, for particular purposes, is a bequest of the money as a legacy to the persons and for the purposes named. The property passes as land or money according to the quality impressed upon it by the testator. If no intention appears in the will to convert money into land, or if the conversion be made by the direction of the testator by judicial decree, or by operation of law, for the mere purpose of investment, or for the greater security of the fund, the land is substituted for the fund, and shall go to the same persons, and upon the same contingencies, which would have affected the fund had it remained specifically personal estate. Holland v. Cruft, 3 Gray [Mass.] 162; Holland v. Adams, [3 Gray,

1114

Mass.] 188; Oeslager v. Fisher, 2 Pa. 467; Craig v. Leslie, 3 Wheat, [563] 577, [4 L. Ed. 460]; Williams, Ex'rs. 658; 1 Jarm. Wills, *584; Perry, Trusts, 458."

In re Alabone's Estate, 75 N.J.Eq. 527, 72 A. 427, the same rule is followed.

While we have not been cited to any Texas cases, nor have we found any, in which this identical question is presented, the holdings in the cases of Magnolia Park Company v. Tinsley, 96 Tex. 364, 73 S.W. 5; Scottish-American Mortgage Co. v. Massie, 94 Tex. 339, 342, 60 S.W. 544; Richardson v. McCloskey, Tex.Civ.App., 261 S.W. 801; Id., Tex.Com.App., 276 S. W. 680; McCanless v. Devenport, Tex.Civ. App., 40 S.W.2d 903; and Hardcastle v. Sibley, Tex.Civ.App., 107 S.W.2d 432, reflect that the Texas courts recognize that property of a trust or of an estate of a deceased will not lose its character as personalty or realty, though converted into another form, if such would defeat the purposes of the trust or the will of the testator or the rights of the parties entitled to it.

We believe that the intention of the testator would be defeated by allowing the plaintiff to recover; and since no rule of Texas law will be violated by giving effect to the intention of the testator, it is our duty to do so.

Therefore the judgment of the trial court is affirmed.